# J. K. HALL

*v.*

# JAMES HAMILTON.

1. RELEASE OF ERRORS — *by attorney, on cognovit, binding.* Where a defendant, by his attorney in fact duly authorized, confesses judgment and releases any and all errors, this will preclude him effectually from assigning any error in the proceedings.

2. COOK COUNTY COURTS — *judges must sit separately.* Each of the judges of the circuit and superior courts of Cook county, under the constitution, is invested with all the powers of a circuit judge, and may hold court in a branch thereof, and it is error for more than one to preside at the same time during the trial of any case, or to participate in any decision. The record should show that but one judge presided.

3. But if the record shows more than one judge present, this is only an error which does not affect the jurisdiction of the court, and may be waived or released.

4. SAME — *judges of other circuits may preside.* Judges of other circuits may hold branches of the Cook county circuit and superior courts, and the statute authorizing this is not in conflict with any constitutional provision.

5. CIRCUIT JUDGE — *extra compensation when holding court out of his circuit.* So much of the act entitled " Courts " as provides for compensation being paid to a judge holding a branch court out of his circuit, in addition to his salary, is unconstitutional and void.

WRIT OF ERROR to the Superior Court of Cook county.

Messrs. PRENTICE & HOOKE, for the plaintiff in error.

Messrs. HIGBEE & PLUMMER, for the defendant in error.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This was a confession of judgment in the Superior Court of Cook county, at the June term, 1874. The declaration concludes to the damage of the plaintiff $614, and the *cognovit* confesses an indebtedness of $634, and judgment was rendered

for that sum. The warrant of attorney, by virtue of which this judgment was confessed, authorizes and empowers Forrester, or any other attorney, to enter the appearance of the defendant, to waive service of process, and confess judgment on a note in favor of defendant in error for the amount due, at any time after maturity, with an attorney's fee of twenty dollars, and to file a *cognovit* for the amount due, with an agreement that no writ of error should be prosecuted or appeal taken, and to release all errors. The *cognovit* so agrees and expressly releases all errors.

On such a record we are unable to comprehend by what rule of law this writ may be maintained. Where the defendant, in the most solemn and deliberate manner, waives of record all errors that may have occurred on the trial of a cause, it would be unheard of to permit him to assign as error that which he had solemnly released of record. It would be an act of bad faith on his part, that justice must forbid, and which we can never sanction. If a party cannot be bound by his deliberate admissions of record in open court, we would be at a loss to know how he could be estopped. After a party has thus deliberately waived all errors, we cannot but feel surprise that the case should be brought to this court, and it must be for purposes of vexation or some other equally wrongful purpose.

Nor does the fact that the errors were released by his attorney in fact, in the slightest degree change the aspect of the case. There is no pretense that plaintiff in error did not execute the warrant of attorney, and if he did, he solemnly gave authority to him to release the errors as he did, and every principle of good faith and justice requires that he should be bound by the action of his attorney within the scope of his authority. Such has always been the doctrine, and we are not aware that it has ever been controverted ; nor do we see how so elementary a principle could be. To hold otherwise would overturn the business of the country, as much, if not the larger portion, of the commerce of the world is transacted through

agents of various kinds. The release of errors in this case was as effectual as if made by plaintiff in error in person.

It is urged that the *cognovit* was entitled in the circuit court of Cook county and that it was error to file it and take the confession in the Superior Court of that county. It may be that this was technically an error, but we have seen that all errors were released. Again, the confession was clearly within the power conferred. The warrant authorizes the confession to be made in any court of record and the Superior Court answers to the description. We could not reverse for such a technical error even if it had not been released. No court should be astute in finding nice technicalities to hinder or prevent justice, and such nice technicalities if allowed would have that effect.

It is also insisted that the Superior Court consists of only three judges, and that from the *placita* to this record, it appears that there were five judges present, and constituting the court.

By the 23d section of Art. VI of our constitution the county of Cook is created a judicial circuit. And it provides that the circuit court of Cook county shall consist of five judges, until increased as therein provided. " The present judge of the Recorder's Court of the city of Chicago and the present judge of the circuit court of Cook county shall be two of said judges," and " The Superior Court of Chicago shall be continued, and called the Superior Court of Cook county." The 25th section provides that the judges of the circuit and Superior courts of Cook county shall receive the same salaries, payable out of the State treasury, as may be payable to the circuit judges of the State. It is also provided by the 24th section that " Any judge of either of said courts shall have all of the powers of a circuit judge, and may hold the court of which he is a member. Each of them may hold a different branch thereof at the same time."

From these constitutional provisions it is apparent that it was intended that each of the judges of both courts should be invested with all the powers of a circuit judge, and should, alone, and independent of the others, perform all the functions and discharge all the duties imposed by the constitution

and legislative enactments, which pertain to the circuit judges of the State. We are unable to perceive any provision of the constitution which requires the judges of either or both courts to act collectively or even a *quorum* on any question, nor has it been required by the General Assembly. Whether the General Assembly might not require all or a majority of the judges of each court or both courts to sit in bank and determine all questions of law arising on pleadings, in arrest of judgment, and in the decision of all motions for new trials, it is not material to now consider, as no statutory requirement of the kind has been imposed. Although called by different names, the judges of each court are severally, under the law as it now stands, in fact, but circuit judges. (See *Jones* v. *Albee*, 70 Ill. 34. And being circuit judges they should in all things conform to the laws, usages and practice governing the circuit courts of the State. When holding court each judge should hold a separate branch, and keep and in all things perform the duties of a circuit judge. The record should show that he alone was presiding, unconnected with either or any of the other judges of either court. The record of the business he may transact should state that he was present holding a branch court, and should not state that any other judge was present. It does not matter whether the journal of the proceedings of the several judges is entered in one or several books, so that it shows what is done by each.

One judge may settle a portion of the pleadings, or decide motions in a case, and another judge may settle other portions of the pleadings and decide other motions, and another judge may try the case, or all may be done by one judge, so the record shows what was done by each judge in the case. There is no law now in force authorizing all the judges to sit together, and try and decide cases. The law contemplates the action of but one judge, sitting at the same time, in the trial of a case. And it is error for more than one to sit at the same time on the trial of the case, but it is only an error, that may be waived or released.

In this case the *placita* to the record shows that three of
the judges of the Superior Court were present, as also two cir-
cuit judges. If the record is true in this regard, then the de-
cision of all questions was submitted to five judges instead of
but one, as contemplated by the law. If that number sat and
decided questions, they may have been decided by three of the
five, and the decision different from what it would have been
had but one judge sat. Hence such an organization of the
court is not such as litigants are entitled to have when their
causes are tried.

But the court thus organized is not without jurisdiction.
Either of the five judges had jurisdiction to try any and all
causes, and the association of the others with him did not de-
tract from or deprive him of the jurisdiction vested in him by
the constitution and the statute. The *placita* to all records in
that court, and to transcripts to this court, should show that
one judge sat on the trial, who it was, and that he was holding
a branch court. But being only error, which may be waived
or released, plaintiff in error released it with all others by the
*cognovit* filed by his attorney in fact.

As to the fact that two judges from other circuits sat in the
case, we have seen that did not oust the court of its jurisdic-
tion. In the case of *Jones* v. *Albee, supra,* it was held that
judges from other circuits might hold branches of the Cook
circuit and Superior courts ; that such action was not
prohibited by the constitution and was expressly sanctioned by
the statute. Nor do we see any reason to change the conclu-
sion there reached. If the legislature were to require these
courts in Cook county to sit separately in bank, then a very
different question would arise, whether judges of other circuits
could be authorized to participate in the transaction of business
required to be disposed of by a full bench.

We have seen that each of the judges is vested with the same
power, whether of the one or the other of these courts. The
thirty-ninth section of the chapter entitled " Courts," R. S. 1874,
p. 331, provides that " judges of the several circuit courts of
56—74TH ILL.

this State may interchange with each other and with the judges of the Superior Court of Cook county, and the judges of said circuit courts and of the Superior Court of Cook county may hold court, or any branch of the court, for each other, and perform each other's duties, where they find it necessary or convenient." This section fully authorizes circuit judges to hold branch courts for the Superior Court of Cook county, or of the circuit court for that or any other circuit. Nor do we see any provision of the constitution which prohibits judges from interchanging with each other, or prevents the legislature from authorizing judges to hold branch courts for each other.

The fortieth section of that chapter provides for compensating judges who shall hold court or a branch court for another judge out of his circuit or judicial district, by authorizing an appropriation of ten dollars per day to such judge, out of the county treasury. The sixteenth section of the judiciary article of our constitution is this: "From and after the adoption of this constitution, judges of the circuit courts shall receive a salary of $3,000 per annum, payable quarterly, until otherwise provided by law. And after their salaries shall be fixed by law they shall not be increased or diminished during the terms for which said judges shall be respectively elected; and from and after the adoption of this constitution no judge of the Supreme or circuit courts shall receive any other compensation, perquisite or benefit, in any form whatsoever, nor perform any other than judicial duties to which may belong any emoluments." This language is as full, clear and comprehensive as could be well conceived to prevent Supreme and circuit judges from receiving any other compensation than their salaries, under any name or pretense whatever, for the discharge of any duty pertaining to their offices. And it is prohibitory on the judges from receiving the compensation for the performance of such duties except their salary. It also prohibits the General Assembly from providing any other. But the power to hold such courts as branch courts does not depend upon the fortieth section of the chapter entitled "Courts."

The power is conferred by the thirty-ninth section of that act, and if circuit judges choose under that section to go out of their circuits to hold courts, or branch courts, for other judges, without compensation therefor, we fail to see that it violates any provision of the constitution. The power to perform the duties in other than their own circuits in nowise depends upon the power to receive extra compensation therefor, as they are still performing judicial duties.

The judgment of the court below must be affirmed.

*Judgment affirmed.*

Mr. JUSTICE SCOTT: I concur in this decision, but not in all the reasoning in the opinion.

The Superior Court of Cook county is composed of three judges, and it is proper the *placita* should show how many of them may be present on the day fixed by law for the convening of the court, or at any other time during the term. This is all the office the *placita* performs. The proceedings are to be had in the Superior Court, and hence any order made by either of the judges in the trial of the cause will be presumed to be authorized by law. Commonly, the bill of exceptions will show before which judge the cause was tried. The fact the clerk in making up the transcript may certify that any particular number of judges were present, cannot vitiate the record. It is sufficient if it shall appear by the record the cause was heard before either of the judges of the Superior Court, or any other judge authorized by law to hold a branch of that court.

Mr. JUSTICE SHELDON: I concur with Mr. JUSTICE SCOTT.