EUGENE S. PIKE *et al.*

*v.*

THE CITY OF CHICAGO.

*Filed at Ottawa March 11, 1895.*

1. COURTS—*county judges may exchange with each other.* County judges in this State may exchange with and hold court for each other, and perform each other's duties, with like privileges as the judges of the circuit courts.

2. SAME—*two county judges may hold court in same county at same time.* A county court may be held in a county by the resident judge, and a branch county court may be held at the same time and place by a county judge resident of another county. (MAGRUDER, J., dissenting.)

3. SAME—*act of April 10, 1885, construed as to exchanges by county judges.* The act of April 10, 1885, providing that county and probate judges may perform the duties of each other in certain cases, does not restrict the power of county judges to hold each other's courts, as conferred by the act of 1879. Laws of 1879, p. 109.

4. SPECIAL ASSESSMENTS—*court may allow jury to view premises.* It is within the discretion of the court to permit the jury to view the premises upon the application of either party, in a proceeding to confirm a special assessment.

5. SAME—*basis on which assessment is made, not material.* A special assessment, otherwise just and proper, will not be defeated because the commissioners proceeded upon a basis or adopted a method not deemed the best that could have been chosen.

6. SPECIAL FINDINGS—*relating to basis of assessment, properly refused.* Where the issue in a special assessment proceeding is whether the property is assessed more than it is benefited, special questions which relate solely to the basis upon which the assessment was made are properly refused.

7. TRIAL—*improper remarks of counsel.* Improper remarks of counsel, in the presence of the jury, are no cause for reversal unless they were objected to at the trial, and the trial court was called upon to make a ruling upon the objection.

8. WITNESSES—*as to value of property need not be experts.* Any person who has knowledge of the effect which the construction of an improvement will have on the market value of the property assessed is competent to give an opinion as to such value, the weight to be given to such opinion being for the jury.

9. PUBLIC IMPROVEMENTS—*necessity for, a question for city council.* Whether or not an improvement is one which the public interest of a city requires, is a question for the city council,

10. APPEALS AND ERRORS—*on appeal, jury's finding as to benefits will stand.* Where, on appeal, a conflict of proof appears as to whether the benefits equal the assessment, the jury's finding upon that subject, in the absence of error, will stand.

APPEAL from the County Court of Cook county; the Hon. GEORGE W. BROWN, Judge, presiding.

This was a special assessment proceeding, in the county court of Cook county, for the construction of a system of sewers in territory lately annexed to Chicago. Objections were filed by appellants to the confirmation, which were overruled, and a trial by jury was had to determine whether or not the property of the objectors was assessed more or less than the benefits, or more or less than its share of the amount assessed. The verdict was in favor of the city. Motions for new trial and in arrest of judgment were overruled, and the assessment con· firmed. This appeal is from the judgment of confirmation.

H. T. & L. HELM, SMOOT & EYER, WILLIAM J. DONLIN, BURKE, HOLLETT & TINSMAN, HAMLINE, SCOTT & LORD, S. L. LOWENTHAL, WALKER, JUDD & HAWLEY, F. E. HALLIGAN, ULLMANN & HACKER, N. M. JONES, F. A. WOODBURY, HENRY HUDSON, M. J. DUNNE, FRANCIS A. RIDDLE, and RICH & STONE, for appellants.

CHARLES C. GILBERT, HENRY S. WALDRON, JOHN S. MILLER, RICHARD PRENDERGAST, and HARRY RUBENS, Corporation Counsel, for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

It is claimed in the argument, as a ground for reversing the judgment, that Judge Brown, before whom the cause was tried, was without jurisdiction to preside and hear the case, for the reason he was county judge of DuPage county, and the county judge of Cook county was holding court in Cook county at the same time that Judge Brown was presiding in this case in Cook county.

The *placita* in the record is as follows : "Pleas before the Hon. George W. Brown, county judge of DuPage county, Illinois, presiding as county judge of Cook county, Illinois, in the absence of and at the request of the Hon. Frank Scales, sole presiding judge of the county court of Cook county, in the State of Illinois." On the day the trial of the cause commenced the record of the county court shows the following : "This cause coming on for hearing, the Hon. George W. Brown, judge of the county court of DuPage county, present and presiding at the request of the Hon. Frank Scales, judge of this court, as a matter of necessity and convenience, and in pursuance of the statute in such case made and provided, said Hon. Frank Scales not presiding or holding court in said Cook county." It appears, however, from the bill of exceptions, that on the day the objections were set for a hearing the objectors interposed an objection to a trial before Judge Brown, who was then presiding, on the ground that he was county judge of DuPage county, and the Hon. Frank Scales, county judge of Cook county, was then in Cook county and actually engaged in holding court and hearing cases. These facts were made to appear by affidavit filed in support of the objection. The court overruled the objection, and at a later date, before the trial before a jury was commenced, the objection was renewed, and a plea to the jurisdiction of the court interposed by a part of the objectors, and the objection was again overruled. Whether the question was raised in the technical mode required by law we shall not stop to consider, but, conceding that the question is properly presented by the record, it will be considered.

In 1873 the legislature passed an act which was incorporated into the revision of 1874, as follows: "Judges of the several circuit courts of this State may interchange with each other and with the judges of the Superior Court of Cook county, and the judges of said circuit courts and of the Superior Court of Cook county may

hold court, or any branch of the court, for each other, and perform each other's duties, where they find it necessary or convenient." The validity of this statute arose in *Jones* v. *Albee*, 70 Ill. 34, and we there held that the act was constitutional. It was also held that a circuit judge from another circuit in the State may properly preside as a judge in the Superior Court of Cook county, when requested, under the provisions of the act of 1873, and the proceedings before him will be valid. In *Hall* v. *Hamilton*, 74 Ill. 437, the *placita* showed three judges of the Superior Court present and also two circuit judges. At that time the Superior Court consisted of only three judges, and it was claimed that the two circuit judges were there without authority of law, but it was held that either of the five judges had jurisdiction to try any and all causes. The case of *Jones* v. *Albee* was approved, and in referring to the statute of 1873 in the revision of 1874 it was said: "This section fully authorizes circuit judges to hold branch courts for the Superior Court of Cook county or of the circuit court for that or any other circuit." In *Wadhams* v. *Hotchkiss*, 80 Ill. 437, where a circuit judge elected and residing in a circuit composed of Adams and Hancock counties was presiding in the Superior Court of Cook county, it is said: "The objection that Judge Sibley could not hold a branch of the Superior Court is not tenable. He was one of the circuit judges of the State, and we have elsewhere held it was competent for them to hold terms of the Superior Court, and that it is not objectionable that more than three branches thereof are being held at the same time." See, also, *Owen* v. *Stevens*, 78 Ill. 462.

It may therefore be regarded as well settled that a circuit judge is not confined to his own circuit, but has the power to hold court in any circuit in the State; that circuit court may be held in a county by a resident judge of the circuit, and a branch circuit court may be held at the same time and place by a judge resident of another circuit.

The county courts of this State are courts of record. They are clothed with a general jurisdiction, unlimited, over a particular class of subjects, and, as held at an early day in *Propst* v. *Meadows*, 13 Ill. 157, when acting within that sphere their jurisdiction is as general as that of the circuit courts. In *Bostwick* v. *Skinner*, 80 Ill. 152, in speaking in regard to the jurisdiction and power of county courts as held in the case last cited, it was said: "The construction given, in argument, in *Propst* v. *Meadows*, 13 Ill. 157, to the law creating the county court, in respect to its relative rank, has been too long adhered to to be now questioned. It has been referred to with approval in many subsequent cases, and, so far as we now recall the decisions of this court, never questioned." Indeed, section 18 of article 6 of the constitution, providing for county courts and their jurisdiction, shows a plain intent that these courts should not be regarded as inferior tribunals. That section declares: "County courts shall be courts of record, and shall have original jurisdiction in all matters of probate, settlement of estates of deceased persons, appointment of guardians and conservators and settlements of their accounts, in all matters relating to apprentices, and in proceedings for the collection of taxes and assessments, and such other jurisdiction as may be provided for by general law." Under this last clause, what prevents the legislature from conferring the same jurisdiction on county courts which is now exercised by the circuit courts?

In 1879 the legislature, with full knowledge of the constitution and the construction this court had placed on the powers and jurisdiction of the county courts, and also with full knowledge of the power of circuit judges to hold courts outside of their circuits, and also with full knowledge of the power of two judges to hold court in one county at the same time, as declared by the decisions of this court, passed an act entitled "An act to authorize

county judges to interchange, hold court for each other, and perform each other's duties," which act is as follows:

"Section 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly :* That the county judges of the several counties of this State, with like privileges as the judges of the circuit courts of this State, may interchange with each other, hold court for each other, and perform each other's duties, when they find it necessary or convenient."

Under this statute county judges may not only exchange with each other, but they may hold court for each other, and perform each other's duties, with like privileges as the judges of the circuit courts, when they find it necessary or convenient. Under this broad language, what power was conferred on county judges to perform judicial duties out of their respective counties? As we have heretofore seen, one circuit judge had the power of calling another into his circuit, and the two had the power to hold two branches of the circuit court at the same time. When the legislature, in the act of 1879, declared that county judges may interchange, hold court for each other, and perform each other's duties, with like privileges as the judges of the circuit court, if the legislature meant what it said then it is apparent that Judge Brown was clothed with power to hold court in Cook county at the same time that the judge of that county was also holding court. The word "privileges" is a term of broad meaning, as will be seen by reference to authors, where the use and meaning of the term have been considered. Anderson's Dic. of Law, 813; 1 Blackstone, 164, 272, 273.

Circuit judges were clothed with certain authority, rights and powers in reference to the discharge of their duties in holding courts out of their own circuits, and we think the legislature, in the passage of the act of 1879, intended, by the use of the word "privileges," to confer a like authority and power on county judges,—in other

words, by the use of the word "privileges" the legislature meant official right or authority. In the argument, however, importance is sought to be attached to an act of the legislature passed in 1885, as follows : "An act to authorize county and probate judges to perform the duties of the offices of one another, in certain cases," approved and in force April 10, 1885.

"Section 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly :* That in case of the absence, death, resignation or inability of a judge of a county or probate court of any county, any county or probate judge may hold such county or probate court, and perform all the duties of the judge thereof, until the return of such judge, the appointment or election of his successor, or until the disability to act ceases."

Section 2 repeals an act of May 23, 1883.

"Sec. 3. Whereas, there has been a recent death of a county judge, and a necessity thereby created to authorize a county or probate judge to perform the duties of the office of such deceased judge; therefore an emergency exists, and this act shall be in force from and after its passage."

This act in no manner militates against the views expressed. Prior to 1885, when a county or probate judge had died or had resigned, or when there was some sudden inability which might impair the mental powers of the judge, there was no statute under which the court could be held by a judge from another county until the difficulty could be removed. This act was intended to remedy this supposed defect in the statute, and also make provision under which probate judges might hold county court and county judges hold probate court. This, as we understand the statute, is its real scope and purpose. Where the county judge was dead, or had resigned, or was afflicted with some malady, so that he could not call upon a judge from another county to come to his assistance, as might be done under the act of 1879 where the judge was

in the discharge of his duties and desired assistance, it was very proper that the legislature should enact a statute to remedy the supposed evil. The third section of the act shows, plainly enough, the purpose of the act. There had been a death, and the legislature thought it wise to enact a law so that court might be held until a successor could be elected by the people. But this act in no respect changed the act of 1879, but left it in full force, as it was enacted.

It is next claimed that the court erred in permitting the jury, on the application of petitioner, to view the premises. Whether the court, in a case of this character, on the application of either party, will allow the jury to view the premises, is a matter resting in the discretion of the court. This was the rule established in *Springer* v. *Chicago*, 135 Ill. 552, and followed in *Vane* v. *City of Evanston*, 150 id. 616. See, also, *Maywood Co.* v. *Village of Maywood*, 140 Ill. 216, where the same doctrine is approved. The question was so fully considered in the cases cited that it must be regarded as settled, and it will not be necessary to enter upon a further discussion of it here.

It is next claimed that improper remarks were made by counsel for petitioner in opening and closing the argument to the jury. It is a sufficient answer to this objection that the court was not called upon to make any ruling upon the objections noted by counsel. That was necessary in order to raise the question here. *North Chicago Street Railway Co.* v. *Cotton*, 140 Ill. 486.

It is also claimed that the court erred in refusing to exclude the evidence of four certain witnesses who testified in regard to the effect the construction of the proposed improvement would have on the market value of the property assessed, for the alleged reason that the witnesses were not experts, and were incompetent to express an opinion on the matters which they testified about. In a case of this character the question to be determined is the effect the proposed improvement will

have on the market value of the property assessed, and it is competent to prove the market value of the property before the improvement and its market value after the improvement. Any person who has knowledge on the subject is competent to testify. What weight the opinion of a witness may be entitled to is a question for the jury. An expert is not required. *Johnson* v. *Freeport and Mississippi River Railway Co.* 111 Ill. 413.

It is also claimed that the court erred in refusing to give to the jury certain special findings asked by the defendants. The facts upon which a jury should be asked to find specially should be material facts, which, if found, would be controlling,—not mere evidentiary facts. (*Chicago and Northwestern Railway Co.* v. *Dunleavy*, 129 Ill. 132.) The real question at issue before the jury in this case was, whether the defendants' property was assessed more than it was benefited or more than its proportionate share of the cost of the improvement; but upon looking into the record it will be found that the facts upon which findings were requested did not relate to that issue. They related solely to the basis upon which the assessment was made. Suppose the basis upon which the commissioners acted was not the best one that might have been chosen, still the basis upon which they acted could not defeat the assessment if the result did not impose an assessment on the property more than it was benefited, or more than its proportionate share of the cost of the improvement.

It is also contended, in the argument, that the assessment was invalid upon the alleged ground that the commissioners "adopted a system purely arbitrary,—one not founded on any just and proper reason, but wholly the result of whim and conjecture." The commissioners appointed to make the assessment reported, under oath, "that they examined the locality where such improvement was to be made, and the lots, blocks, tracts and parcels of land which will be specially benefited thereby, and did estimate what proportion of the total costs said

improvement will be of benefit to the public and what proportion thereof will be of benefit to the property to be benefited, and did apportion the same between the city of Chicago and such property so that each shall bear its relative equitable proportion, the amount so estimated and apportioned to said city being the sum of $2483.80, and the amount so estimated and apportioned to property to be benefited being the sum of $815,713; that having found said amounts, they did apportion and assess the amounts so found to be of benefit to the property upon the several lots, blocks, tracts and parcels of land, in the proportion in which they will be severally benefited by said improvement; and that no lot, block, tract or parcel of land has been assessed a greater amount than it will be actually benefited by said improvement." No attempt was made to show that the commissioners acted fraudulently in making the assessment, or that they were governed by any improper motive, but the complaint is, that in arriving at benefits the wrong method or basis was adopted. In *City of Springfield* v. *Sale*, 127 Ill. 359, it was held that the law has not prescribed what basis for ascertaining the benefits shall be adopted by the commissioners. If the law has prescribed no basis, then it seems to follow that the commissioners are at liberty to adopt such method as may, in their judgment, work out a just result. If, however, a method should be adopted which would impose a greater assessment on any property than it would be benefited, or more than its just proportion of the improvement, the assessment could not be sustained. But the method adopted in this case did not, so far as appears, produce that result.

It is next contended, in the argument, that the improvement, as a whole, is of no benefit for drainage or sewerage. The territory embraced in the district proposed to be improved by the ordinance is a large one, located in the south part of Chicago, some five miles long and about two or three miles wide, embracing 5467

acres of land. The south end of the district is eighteen miles and the north end about thirteen miles from the center of the city. Whether the improvement provided for in the ordinance was one which the public interests of the city of Chicago required, was a question purely for the determination of the city council. The question, and the only question, for the jury in this case was, whether the premises of the objectors had been assessed more or less than they would be benefited, or more or less than their proportionate share of the cost of the improvement. Upon this question much evidence was introduced by the respective parties, and, as is usually the case in a proceeding of this character, the evidence was conflicting. The petitioner introduced evidence which, if believed by the jury, was sufficient to establish the fact that the property of the objectors was benefited in amount as much as it was assessed, while, on the other hand, the objectors introduced evidence that their property was not benefited in amount equal to the assessment. Where there is such a conflict in the evidence, the rule is well settled that the verdict of the jury will not be disturbed unless the court has erred in its instructions or in the admission or exclusion of evidence. That was not the case here. Indeed, no fault is found, in the argument, with the ruling of the court in the admission of evidence or the instructions.

A few other questions of minor importance have been raised and discussed in the argument. They have been considered, but are not deemed of sufficient importance to merit a discussion here.

The judgment of the county court will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE MAGRUDER, dissenting:

One of the errors assigned is, that the judge, who passed upon the objections and presided at the hearing before the jury in the court below, was without jurisdic-

tion or power to act in the case, because he was the judge
of the County Court of DuPage County, and was holding
court in Cook County as the judge of the county court of
Cook county at the same time at which the regular judge
of the latter court was also holding court in Cook County.

Section 18 of Article 6 of the constitution of 1870 pro-
vides, that "there shall be elected in and for each county
one county judge and one clerk of the county court,
whose terms of office shall be four years." I do not think
that, under said section 18, the legislature has the power
to authorize the county court of one county in this State
to divide itself into two branches and hold sessions of
both branches at the same time, one presided over by the
regular county judge of the county, and the other pre-
sided over by the county judge of another county called
in for that purpose. Nor am I able to concur in the view,
that such authority is conferred by the Acts of the legis-
lature to which attention has been called, and which are
hereinafter mentioned.

In 1879 the legislature passed an Act, providing "that
the county judges of the several counties of this State,
with like privileges as the judges of the circuit courts of
this State, may interchange with each other, hold court
for each other, and perform each other's duties, when
they find it necessary or convenient." (1 Starr & Cur.
Ann. Stat. page 731). Just what privileges of the judges
of the Circuit Court are here referred to is not clear.
The reference was probably to the privilege—granted by
section 23 of the Act of 1874 to revise the law in relation
to circuit courts and the Superior Court of Cook County
—of receiving a compensation not exceeding $10.00 per
day for the time they should hold court outside of their
own circuits. But this Court held in 1874, that said sec-
tion 23 was unconstitutional, and that Supreme and Cir-
cuit judges could not receive "any other compensation
than their salaries, under any name or pretence whatever,
for the discharge of any duty pertaining to their offices."

(1 Starr & Cur. Stat. page 708 ; *Hall* v. *Hamilton,* 74 Ill. 437). In 1879 Circuit judges did not have the privilege of taking said per diem for the performance of judicial duties in outside circuits. The reference could not have been to the privilege of holding branch courts, as specified in section 22 of said Act of 1874. The latter section provides, that "judges of the several circuit courts of this State may interchange with each other and with the judges of the Superior court of Cook County; and the judges of said circuit courts and of the Superior Court of Cook County may hold court or any branch of the court for each other, and perform each other's duties, where they find it necessary or convenient." (1 Starr & Cur. Stat. page 707).

It will be observed, that the words, "or any branch of the court," as applied to circuit courts in the act of 1874, are omitted from the act of 1879 which applies to county courts, although the similarity in the phraseology of the two acts indicates, that the latter was substantially a copy of the former with the exception of the words so omitted. The omission of these words from the act of 1879 shows, that the legislature did not attempt to confer upon the county judges of the several counties the power to hold branches of their respective courts for each other. The provision in the act of 1874 in reference to branch courts evidently had its origin in the peculiar provisions of the constitution of 1870 in reference to the Superior Court of Cook County which before 1870 consisted of three judges, and the circuit court of Cook County which by the constitution was made to consist of five judges. (Cons. Art. 6, secs. 23, 24; *Jones* v. *Albee,* 70 Ill. 34). Section 24 of article 6 of the constitution says of the judges of said Circuit and Superior courts of Cook County: "Each of them may hold a different branch thereof at the same time." Hence the decisions of this court as to the right of the judges of the Circuit and Superior Courts of Cook County to hold branches of their respective courts

for each other, and as to the right of the judges of other circuit courts in the State to hold branches of said Circuit and Superior Courts of Cook County for the latter judges, have no application to judges of the county courts of the State. The first section of the Act of May 3, 1873, which authorized certain judges to hold branch courts at the "request" of each other, and which is referred to in *Jones* v. *Albee, supra*, and other cases, was repealed in 1874, and said section 22 above quoted was evidently intended as a substitute for it. (Rev. Stat. 1874, page 1045; *Harvey* v. *Van DeMark*, 71 Ill. 117; *Scott* v. *White*, id. 287; *Hall* v. *Hamilton, supra; Bradley* v. *Barbour*, 74 id. 475; *Waller* v. *Tully*, 75 id. 576; *Reitz* v. *People*, 77 id. 518; *Courson* v. *Browning*, 78 id. 208; *Owen* v. *Stevens*, id. 462; *Brown* v. *Rounsavell*, id. 589; *Wadhams* v. *Hotchkiss*, 80 id. 437; *Morgan* v. *Corlies*, 81 id. 72.

By an act of the legislature passed on April 10, 1885, it was provided, "that in case of the absence, death, resignation, or inability of the judge of a county or probate court of any county, any county or probate judge may hold such county or probate court and perform all the duties of the judge thereof until the return of such judge, the appointment or election of his successor, or until the disability to act ceases." (3 Starr & Cur. Stat. page 330). From the provision that, in case of the absence of a county judge, another county judge may hold his court and perform his duties until his return, the implication is clear that the right of such other county judge to hold the court and perform the duties ceases upon the return of the absentee. Hence, both cannot hold court in the same county at the same time. Therefore, I cannot resist the conclusion, that the judge of the county court of DuPage county could not sit in Cook County as judge of the county court of Cook County and try this assessment proceeding, if, at the same time, the judge of the county court of Cook County was holding his court and transacting the business thereof.

The question then arises whether the judge of the county court of DuPage county erred in overruling any of the motions, objections or pleas made and filed in the court below, which sought to question his right to sit in the case. In the *placita* at the beginning of the record is the following entitlement: "Pleas before the Hon. George W. Brown, County Judge of DuPage County, Illinois, presiding as County Judge of Cook County in the absence and at the request of the Hon. Frank Scales, sole presiding Judge of the County Court of Cook County," etc. But on July 19, 1892, before the hearing of the objections to the confirmation of the assessment began, some of the property owners objected to the county judge of DuPage County sitting to try the case, and supported the objection by a sworn affidavit showing that the county judge of Cook County was at that very time actually engaged in hearing causes in his court in the same building in Cook county where the county judge of DuPage county was proceeding to hear this assessment proceeding, and that the two judges were holding court in rooms fronting on the same hall-way and only about one hundred feet apart. The objection was in the nature of a motion to dismiss, and was so treated by the parties, and is so spoken of in the bill of exceptions. It was not exactly a motion to dismiss for want of jurisdiction, because the jurisdiction of the county court of Cook county was not questioned, and it was not claimed that the county court of DuPage county was in session. The objection was to the right of the sitting judge to exercise the powers of the county Court of Cook County. The facts stated in the affidavit, showing his incompetency to sit, do not seem to have been contradicted, and must be assumed to have been true. Hence, the motion must have been overruled, either upon the ground that the facts stated in the affidavit did not show a want of power in the sitting judge to try the case, or upon the ground that the objection was not presented in the proper mode, or at the

proper time.   If the views already expressed are cor-
rect, it would follow, that the facts set up in the affidavit
did show a want of power; and it was error to overrule
the objection or motion, if the ground, upon which the
power to act was denied, was presented at the proper
time and in the proper way.

The objection was certainly made as soon as it could
be made.   All proceedings prior to the hearing had been
in the county court of Cook County, and it could not be
known until the hearing began, that an outside judge
would preside.   If the objection be regarded as a motion
in the nature of a motion to dismiss for want of jurisdic-
tion, it could be made at any time, because, if the affi-
davit was true, there was an absolute want of power to
take any action at all and, therefore, a failure of juris-
diction both as to the subject matter and the parties.
(*Stoughton* v. *Mott*, 13 Vt. 175; *Wildman* v. *Rider*, 23 Conn.
172; 12 Am. & Eng. Ency. of Law, page 309).

While the better and more regular practice in an ordi-
nary suit would be to present the facts stated in the affi-
davit by a plea, yet objection to the jurisdiction may be
taken by motion to dismiss the suit; (*Nazro* v. *Cragin*, 3
Dillon, (U. S.) 474; *Gormly* v. *McIntosh*, 22 Barb. (N. Y.) 271;
*Waterman* v. *Tuttle*, 18 Ill. 292; *F. & M. Ins. Co.* v. *Buckles*,
49 id. 482; 12 Am. & Eng. Ency. of Law, page 309); espe-
cially in this assessment proceeding where no answer or
plea is contemplated, or required to be filed.   (*Goodwillie*
v. *City of Lake View*, 137 Ill. 51).   The objection here made
to the right of the presiding judge to sit in the case does
not come strictly within the class of objections to the
confirmation of the report, which are referred to in sec-
tion 30 of article 9 of the City and Village Act.   (1 Starr &
Cur. Stat. page 498).   But if the objection must be gov-
erned by said section 30, as is contended by counsel for
appellee, the affidavit filed on July 19 may be regarded
as a written statement of the objection, as well as a sworn
statement of the facts upon which the objection was

based. This being so, such written objection took the place of a former pleading, (*Goodwillie* v. *City of Lake View, supra*), and should have been treated as having the effect of a plea in abatement under the application of the strict rule, that such a plea is necessary where the want of jurisdiction over the subject matter does not appear upon the face of the proceedings, but is only made to appear *aliunde* by the proof of an outside fact. (*F. & M. Ins. Co.* v. *Buckles, supra*).

It appears, however, that on November 14, 1892, before the hearing before the jury began, some of the property owners did file a formal written objection, and others a formal plea to the jurisdiction, setting up the same facts as were stated previously in the affidavit, but the plea was stricken from the files, and the objection was overruled. It was not necessary that the plea should be sworn to. Under our statute, pleas in abatement, which go to the jurisdiction of the court, are not required to be sworn to. (1 Starr & Cur. Stat. page 177; *Howe* v. *Thayer*, 24 Ill. 246). Nevertheless, some of the property owners afterwards on November 26, 1892, before the hearing before the jury was as yet entered upon, filed a formal plea setting up the same facts, which was verified by oath and signed by each of the objectors therein named. This verified plea was entitled to the same force and effect as the affidavit of July 19, but no action is shown by the bill of exceptions to have been taken by the court in reference to it, although one of the reasons filed in support of the motion for a new trial was, that the court refused to sustain, and overruled said plea of November 26.

Why the particular property owners filing this plea should have been granted a new trial and the others refused one, it is difficult to understand. So far as can be discovered, every reason, urged in favor of a new trial, applied to the latter as well as to the former. The affidavit in support of the motion for a new trial, showing that, on the day when the judge of the county court of

DuPage county commenced the hearing of this cause in the court house in Cook county, the judge of the county court of Cook County was holding his court in another room on the same floor in said court house, was filed on behalf of all the property owners.

The pleas filed by one or more property owners were nothing more than written objections in this proceeding, and hence any erroneous ruling in reference thereto inured to the benefit of all the property owners under the stipulation, made by the parties and recognized by the court, "that all objections and motions and exceptions made and taken on behalf of any one objector are made and taken on behalf of all the objectors during the trial of this cause."

So far as the question of the waiver of objections to the trial of the cause by the judge of the county court of DuPage County after the hearing before the jury began on November 26 is concerned, it may be said that there could be no such waiver. If the view here presented is correct, the presiding judge had no more power to sit than if he had been a member of the bar, or any other person without official position. Jurisdiction cannot be given by consent to an individual who is not a judge. (*Hoagland* v. *Creed*, 81 Ill. 506; *Bishop* v. *Nelson*, 83 id. 601; *Cobb* v. *People*, 84 id. 511; *Andrews* v. *Wheaton*, 23 Conn. 112). Jurisdiction over the subject matter cannot be conferred upon a court by consent of parties, nor can want of it be waived. (*Leigh* v. *Mason*, 1 Scam. 249; *Beesman* v. *City of Peoria*, 16 Ill. 484; *Peak* v. *People*, 71 id. 278).

The recital in the *placita* cannot be regarded as conclusive in this case. All the proceedings hereinbefore referred to are set out in the bill of exceptions. In *Brown* v. *Rounsavell*, 78 Ill. 589, it appeared from the *placita* in the record that, in the trial of a case in the Circuit Court of Cook County, the five judges, of which that court was then composed, were present and sitting together with a judge of the third judicial circuit as assistant judge; and

155—43

it was there held that, inasmuch as the bill of exceptions showed the trial to have taken place before one Circuit judge, the judgment would not be vitiated by a defect of form in the *placita.* (*Owen* v. *Stevens, supra.*)

If the *placita* in this case had left out the words, "in the absence * * * of the * * * sole presiding judge of the county court of Cook County," it would have been presumed that the judge of the County Court of DuPage county was presiding because of such absence. These words were not indispensable. (*Reitz* v. *People,* 77 Ill. 518 ; *Morgan* v. *Corlies,* 81 id. 72). But the presumption can be rebutted by proof. The presumption is indulged, when nothing to the contrary is shown. (*Scott* v. *White,* 71 Ill. 287). It is overcome when the contrary appears. Therefore the not indispensable recital of absence may be shown to be incorrect. The bill of exceptions when signed and filed is a part of the record, and while it may not be resorted to for the purpose of supplying the defect where there is no *placita* at all, it may yet furnish the evidence that the recital in a *placita* is incorrect. (*P. M. L. Co.* v. *City of Chicago,* 56 Ill. 304 ; *Harvey* v. *Van DeMark,* 71 id. 117). The object sought to be reached in this case was sought to be reached by motion sustained by affidavit in *Waller* v. *Tully,* 75 Ill. 576 ; and while we there affirmed the action of the court below in denying the motion, it was upon the broad ground that the presiding judge had the power to sit, and not because the mode of presenting the question was improper.

For the reasons thus stated it seems to me, that the court below erred in overruling the objection made on July 19, and also in overruling the motion for a new trial as to these appellants.