(No. 24285.—

JOHN T. CUMMINGS, Petitioner, *vs.* CLAYTON F. SMITH *et al.* Defendants.

*Opinion filed December 22, 1937—Rehearing denied Feb. 16, 1938.*

Farthing, C. J., and Stone, J., dissenting.

Michael J. Ahern, for petitioner.

Thomas J. Courtney, State's Attorney, (William J. Tuohy, Jacob Shamberg, and Nathan J. Kinnally, of counsel,) for defendants.

Mr. JUSTICE JONES delivered the opinion of the court:

On leave granted, the Hon. John T. Cummings, judge of the city court of Kewanee, filed his petition in this court for a writ of *mandamus* against the county commissioners, the comptroller, and the sheriff of Cook county. The defendants filed a motion to strike the petition and to dismiss. The cause is at issue on the pleadings.

The sufficiency of the petition is raised by the motion. The petition alleges that by agreement with the judges of the circuit court of Cook county the petitioner held court as one of the judges of the circuit court for ten days in May, 1937. He was promised that he would be reimbursed for his expenses of travel, and his expense for up-keep and maintenance while holding court in Chicago. The chief justice of the circuit court certified to the comptroller that for the last five days of the period petitioner was entitled to $100 for up-keep and maintenance and $5.30 for travel expense. A similar certificate for the first five days was issued to the sheriff as custodian of a fund known as the "marriage fund." The county commissioners and the comptroller refused payment on the ground that no authority in law exists for the payment to petitioner of the amount certified or of any amount. The sheriff refused payment of the certificate directed to him on the ground that the marriage fund is a public fund not subject to the control of the judges of the circuit or superior court.

For the year 1937, the county commissioners appropriated the sum of $4500 for the payment of expenses of judges from other judicial districts, to be made upon certificate of the chief justice of the circuit court. Prior to the adoption of the 1937 appropriation, the judges of the circuit and superior courts, with the knowledge of the commissioners, resolved that judges of courts outside of Cook county should be reimbursed in the lump sum of $20 per day for their expenses of up-keep and maintenance while holding court in Cook county.

The marriage fund was created in 1916 by the judges of the circuit and superior courts to thwart a scandalous practice by magistrates outside of Chicago in employing runners to solicit marriage ceremonies in the county building; and, further, to prevent interruption of court proceedings by parties desiring to be married. The judges assigned a room in the county building for marriage ceremonies and designated the holder of the office of sheriff as trustee to receive, on their behalf, any gratuities offered for the performance of marriage ceremonies, on condition that the money be used to maintain the room, pay salaries of two persons employed by the sheriff for that purpose, and the expenses of judges from other jurisdictions performing such ceremonies or holding court in Cook county, upon certification by the respective chief justices, any surplus to be turned over to the county for the public benefit. There is sufficient money in each fund to pay the respective amounts certified.

The petition alleges the congestion of the dockets of the circuit and superior courts of Cook county and the necessity for the services of outside judges in the due administration of justice; that if they are not reimbursed for their expenses they will refuse to come upon request of the judges of the circuit court, and that, if required by the Supreme Court to accept assignments to such service without reimbursement for their expenses, their salaries would be diminished, contrary to the constitution. The prayer of the petition is that the county commissioners and the comptroller be required to issue a warrant upon the county treasurer for payment of the certificate directed to the comptroller, and that the sheriff be required to pay the other certificate out of the marriage fund.

The defense is that the payment of the certificates would amount to an increase of petitioner's salary during his term of office, contrary to law; that the marriage fund came to the hands of the sheriff by virtue of his office and is the prop-

erty of the county, and that, as to that fund, the petition erroneously seeks the enforcement of a trust by *mandamus*.

Section 1 of article 6 of the constitution provides that the judicial powers, except as otherwise provided, shall be vested in one Supreme Court, circuit courts, and other courts therein named, "and such courts as may be created by law in and for cities and incorporated towns." The city court of Kewanee was created under this provision. Section 32 of article 6 provides that all officers, where not otherwise provided for therein, shall perform such duties and receive such compensation as is or may be provided by law. Section 16 of article 6 fixes the salaries of judges of the circuit court at $3000 per annum, payable quarterly, until otherwise provided by law. It provides that after their salaries shall be so fixed, they shall not be increased or diminished during the term for which they shall be elected, and that, from and after the adoption of the constitution, no judge of the Supreme or circuit court shall receive any other compensation, perquisite or benefit, in any form whatsoever, nor perform any other than judicial duties to which may belong any emoluments. Section 25 of the same article provides that the judges of the superior and circuit courts and the State's attorney of Cook county shall receive the same salaries, payable out of the State treasury, as circuit judges of the State, and such further compensation, to be paid by the county of Cook, as may be provided by law, and that such compensation shall not be changed during their continuance in office. Section 11 of article 9 of the constitution provides that the fees, salaries or compensation of no municipal officer, elected or appointed for a definite term, shall be increased or diminished during such term. Section 23 of the act providing for courts of record in cities (Ill. Rev. Stat. 1937, chap. 37, par. 355) provides that judges of said court shall be allowed and receive as an annual salary in lieu of all other fees, perquisites or benefits whatsoever, in cities having a population of more

than 5000 inhabitants (stating sums of money graduated according to the population of the city) to be paid out of the State treasury. By section 29 of the act relating to circuit courts and the superior courts of Cook county (Ill. Rev. Stat. 1937, chap. 37, par. 72.29) judges of circuit courts and the superior court may interchange with each other where they find it necessary or convenient. Section 6 of the City Courts act (Ill. Rev. Stat. 1937, chap. 37, par. 338) accords like privileges to judges of city courts, and to exchange with judges of county and probate courts.

It is conceded by all parties that the constitution prohibits any increase or decrease in the salary or compensation of a judge of a circuit or city court during his term of office. The question is whether or not reimbursing petitioner for the expenses in controversy amounts to an increase in the compensation fixed by the statute. The defendants rely upon *Hall* v. *Hamilton*, 74 Ill. 437. In that case we held that section 40 of the act relating to courts (Rev. Stat. 1874, p. 331) authorizing extra compensation at the rate of $10 per day to be paid a judge holding court outside his circuit or judicial district was unconstitutional. In the course of the opinion we quoted section 25 of article 6 and said: "This language is as full, clear and comprehensive as could be well conceived to prevent Supreme and circuit judges from receiving any other compensation than their salaries, under any name or pretense whatever, for the discharge of any duty pertaining to their offices. And it is prohibitory on the judges from receiving the compensation for the performance of such duties except their salary. It also prohibits the General Assembly from providing any other." We held in *Cook County* v. *Healy*, 222 Ill. 310, the words "compensation" and "salary," as employed in section 25 of article 6 of the constitution, are synonymous. Both words are used in section 16 of article 6 upon which *Hall* v. *Hamilton, supra,* is predicated. The decision in that case obviously treated the terms as

synonymous. This is also apparent from the fact that the constitution and the statutes provide no compensation for judges other than a salary. Therefore, unless the money claimed by petitioner is an addition to his salary fixed by law, it is not within the constitutional or statutory inhibition.

In *Fergus* v. *Russel,* 270 Ill. 304, we sustained appropriations by the General Assembly to the Governor for the care of the executive mansion and grounds, and for heating, lighting, expenses of public receptions, wages and sustenance of employees, automobile and stable expense and other incidental expenses of the executive mansion, in the sum of $13,000 per annum; to the Lieutenant Governor, $2000 for traveling expenses; to the Secretary of State, $2000 for editing the "Blue Book;" to the Superintendent of Public Instruction, $1500, each, for conducting three county examinations; $4500 per annum for setting questions and correcting manuscript; $250 per annum for conducting State examinations, setting questions and correcting manuscripts, and $1400 for conducting examinations for medical colleges. Each appropriation was in addition to the salary of the official named. We held that none of the expenses authorized in the Governor's appropriation were in any way personal to him and that none of them should be borne by him personally. We also held that if, in the performance of the duties of his office, it became necessary for the Lieutenant Governor to incur traveling expenses, these constitute a proper charge to be paid by the State. The appropriations to the Secretary of State and the Superintendent of Public Instruction were upheld on the ground that the money was to be expended for meeting the expenses of conducting those offices.

The petition in this case alleges, and the motion to strike admits, the necessity for obtaining the services of outside judges in Cook county. It is clear that the expenses of such outside judges, in coming to Chicago and conducting court, are incurred under such necessity in conducting the

business of those courts. It, therefore, cannot be said that such expenses are personal to the judges, any more than it can be said that the expenses of maintaining the executive mansion are personal to the Governor, or that the Lieutenant Governor's travel expenses, or the expenses of the Secretary of State or the Superintendent of Public Instruction, incurred in conducting the business of their respective offices, are personal to those officers. The difference between *Hall* v. *Hamilton, supra,* and the *Fergus case,* is apparent. It is equally obvious that this case does not embrace an attempt to increase the salary of petitioner, as in the *Hamilton case,* but to reimburse him only for expenses incurred in conducting the business of the circuit court of Cook county. *Hall* v. *Hamilton, supra,* is therefore not applicable, and the *Fergus case* is controlling here. We hold that payment of legitimate expenses of travel, up-keep and maintenance of judges, incurred in holding court outside their judicial districts, under section 29 of the act relating to circuit courts, or section 6 of the City Court act, is not additional salary or compensation. The same conclusion in similar cases has been reached by the courts of other jurisdictions. *Kirkwood* v. *Soto,* 87 Cal. 394, 25 Pac. 488; *State* v. *Reeves,* 44 S. Dak. 568; *McCoy* v. *Handlin,* 35 id. 487, 153 N. W. 361; *Milwaukee County* v. *Halsey,* 149 Wis. 82, 136 N. W. 139; *State* v. *Kositzky,* 38 N. Dak. 616, 166 N. W. 534; *Macon County* v. *Williams,* 284 Mo. 447, 224 S. W. 835; *State* v. *Atherton,* 19 Nev. 332, 10 Pac. 901.

In *Board of Supervisors* v. *Beveridge,* 16 Ill. 312, the question was whether or not it was the duty of the county to furnish lights and fuel for the office of the circuit clerk. We held that, although there was no statute expressly authorizing the furnishing of those items, it is the duty of each county to pay the expenses of the local administration of justice, arising from our general system of county government, as from express statutes defining the duties of

counties on that subject, of which duties only a part had ever been defined by statute. In *Nye* v. *Foreman,* 215 Ill. 285, the right of the county board to appropriate and pay salaries of assistants to the State's attorney was challenged. The appellees contended that a county is an agency of the State for governmental purposes and that among its implied powers and duties is that of providing for the local administration of justice, including the enforcement of the criminal law. We held that in view of the long, uniform and practical construction of section 7 of article 10 of the constitution providing that county affairs shall be managed by the county board, the board had the right to appropriate and pay the salaries. While these cases do not relate to expenses such as are here involved, the principle is the same. The expenses of judges in holding court from outside judicial districts pertain to the local administration of justice as much so as in the cases cited. It follows that it is the duty of county boards to provide for and pay such expenses.

Defendants urge that $20 per day for expenses of upkeep and maintenance is so unreasonable as to demonstrate that it is a subterfuge to accomplish an increase in compensation contrary to law, and is wholly unauthorized. The motion to strike does not charge that $20 per day is excessive for expenses and maintenance of a judge who comes into Cook county to hold court. It is predicated upon the theory that the appropriation made by the county board is illegal, because it would have the effect of increasing the salary of a judge. The defendants take the position that any allowance for expenses, no matter how small, would have that effect and, therefore, the appropriation is void. The county commissioners could have required itemized vouchers to be submitted for such expenses but they did not do so and, in effect, adopted the lump sum plan. Each plan may be said to have its advantages, which are not necessary to be discussed here. We observe no good

reason why such expenses, if legitimate, may not be fixed in advance of their being actually incurred, or why they may not be fixed at a lump sum instead of by itemization. No question is raised by the motion to strike as to the legality of the method by which such expenses were to be certified for payment.

In *Fergus* v. *Russel, supra,* we pointed out that the people of the State have the right to expect and require that their Chief Executive shall maintain the position among citizens of the State which the dignity of his office demands, and that the appropriations to the Governor in that case were a proper expense to be borne by the people. The dignity of the courts and the place of the judiciary in our governmental scheme equally require that its judges be enabled to live in a manner in keeping with the importance of their office. Such provisions for the executive and judicial departments are not for the personal aggrandizement of the incumbents, but are proper and necessary in maintaining those departments on a parity with the like departments of other jurisdictions, insuring a proper respect for our institutions at home and elsewhere.

It is not for the courts to fix or to indicate the amount which may be appropriated or expended for such expenses. If the courts had that power they could fix the expenses of every officer in the State. But this is a function belonging exclusively to the legislative branch of the government. In *State* v. *Reeves, supra,* it was held that lump sum appropriations of $150 per month for expenses of judges of the Supreme Court of the State changing their residence to the capitol, are not a matter for judicial construction, unless the amount is so plainly and palpably in excess of any amount of expense which could possibly be incurred by the judges in the discharge of their official duties as to show, beyond a reasonable doubt, that the purpose was to increase their salaries and not to provide for the payment of their expenses. We said in the *Fergus case, supra*: "We have

nothing to do, however, with the amount of an item of appropriation. As to what the amount should be is a question that rests entirely in the discretion of the legislature." If such appropriations are so grossly excessive as to show on their face they are not intended for expenses, but are made with a purpose to unlawfully increase the salary or compensation of an officer in circumvention of the law, the courts could afford relief, but in the absence of such a showing, the courts may not interfere with or question the wisdom of the legislative body. We are unable to say that $20 per day is so excessive as to show a purpose to increase salaries. The writ is, therefore, awarded against the county commissioners and the comptroller, directing the issue of a warrant on the county treasurer for the amount of the certificate covering petitioner's expenses for the last five days of the period in the sum of $100 and the sum of $5.30 for travel expenses.

The sheriff argues that the marriage fund comes to his hands by virtue of his office and his custody of the courthouse and is therefore a public fund which the judges have no right to take from him. Under our statute a judge of any court of record is included among those authorized to celebrate a marriage. There is no statute imposing that function upon him as a duty and no fee for such service is provided by law. He may, at his pleasure, perform such a ceremony or refuse to do so. If he officiates at a marriage it is his voluntary act. It is not a part of, nor in any way connected with, his judicial duties, but is merely the exercise of a privilege conferred by the statute. He is not authorized to demand a fee but he may receive any gratuity for his services. Inasmuch as such services are not a part of the duties of his office, he is not required to account for any gratuity that he may receive in their exercise. It is money belonging solely to him, in which the public has no interest, and hence it does not constitute a public fund. (*Douglas County* v. *Vinsonhaler,* 82 Neb. 810,

118 N. W. 1058.) To the same effect is *Town of Bruce* v. *Dickey*, 116 Ill. 527. In the latter case we held that a Justice of the Supreme Court was, at that time, entitled to collect fees for professional services as an attorney, and that such fees did not come within the term "emoluments" as used in the constitution, but such emoluments were those which belong to the performance of official duties, and not to work done by employment under a private contract. The fact that the sheriff is custodian of the courthouse, as well as trustee of the fund, is of no significance. His custody of the building is as an officer of the courts, subject to their control. The sheriff has no power to control the use of the courtrooms by the courts or judges thereof, and he cannot dictate what rooms the court shall occupy. That rests with the courts as an inherent power. (*Dahnke* v. *People*, 168 Ill. 102.) His appointment as trustee of the fund does not make it a public fund. The judges could as well have designated any other individual, or a trust company, as custodian of the money. Since this fund is private, the trust created is also private, and this court has no jurisdiction over it in a *mandamus* proceeding. Such matters lie peculiarly within the control of courts of equity. (*Rothschild* v. *Village of Calumet Park*, 350 Ill. 330; *Howell* v. *Moores*, 127 id. 67.) The prayer for a writ commanding the sheriff to pay the certificate directed to him is denied.

*Writ to county commissioners and county comptroller awarded.*
*Writ to sheriff denied.*

Mr. JUSTICE STONE, dissenting:

I concur in the holding of the majority opinion that the marriage fund is a private trust, and, as such, is not subject to control by *mandamus*. I am also of the opinion that the county board has power to appropriate funds to pay such actual, necessary expenses of visiting judges holding court in Cook county, as necessarily arise from that

service, but, in my opinion, only such expenses. More than the amount expended, whether great or small, is an increase in the salary of such judges.

A definite distinction is to be drawn between expenses necessary to the discharge of the duties of an office and those personal to the officer. The latter are prohibited, the former are not. (*Fergus* v. *Russel,* 270 Ill. 304.) Obviously, some showing is necessary to differentiate between the two before public funds can be so used.

I do not concur, either in the holding of the majority opinion that $20 per day has been appropriated by the county board, or that such a sum can be considered expenses necessary to the services of visiting judges,—*i.e.,* necessary to the office. In my opinion, these holdings are supported by neither the facts nor the law of this case. The appropriation of the county board is of the sum of $4500 to pay the expenses of the office or services of visiting judges, and is valid for that purpose and to that extent only. It can be used only on a showing that the expenses sought to be paid out of it are the actual necessary expenses of the office occasioned by the service rendered. This is the basis and heart of the decision of this court in *Fergus* v. *Russel, supra.*

In the *Fergus case,* the decision, controlling here, arose on appropriations made to State officers, including the Governor, Lieutenant Governor, Secretary of State and Superintendent of Public Instruction. The appropriation act required that those appropriations be paid out by warrants on the State Treasury, which warrants "shall, when not otherwise provided by law, be drawn only on itemized bills, accompanied by receipted vouchers, showing the expenditure of moneys named in the itemized bills." The objection was that those appropriations increased the compensation of the officers to whom they were appropriated, contrary to constitutional inhibition. This court said, (pages 326, 7,) : "that no money was intended to be appropriated except so

much as is necessary to meet the ordinary and contingent expenses of the State government; * * * it was the intention of the General Assembly to make these appropriations only for such expenses as the officers to whom the appropriations were made are authorized to incur, and to prevent the payment of the money except on a receipted voucher showing that the expenses had actually been incurred and paid. It is apparent that none of these appropriations were intended to be for the personal benefit of the officer to whom the appropriation was made. It is only necessary to determine, therefore, whether the expenses for which the appropriations were made are such as would properly constitute a charge against the State or should be borne personally by the officer to whom the appropriation was made."

It was held that such expenses were not personal to the officers to whom the appropriations were made, and could not be considered a "shift, device or subterfuge" to increase their salaries. This decision is based on the proposition that the expenses of a public officer, whose salary may not be increased, which are necessary to the discharge of his duties, and these only, may be appropriated for. The appropriation to the Lieutenant Governor for traveling expenses was held valid only to the extent that it refunded his traveling expenses. Of the appropriation to the Secretary of State "For editing the Blue Book, $2000," it was there said: (page 331) "That it was not contemplated or intended that the Secretary of State should personally edit the Blue Book and receive this compensation is too clear to admit of argument; and should he do so, this appropriation would not be available, as he must by his receipted vouchers show that the money secured from this appropriation has been expended by him for this purpose." The repeatedly expressed ground of the opinion in the *Fergus case* is that appropriations for expenses are valid only for money actually expended in meeting the expenses of the

office, and for no more. It is clear from that decision that anything above such amounts would add to the compensation of the officer and result in an increase of his salary.

The majority opinion proceeds on the theory that the county board appropriated the lump sum of $20 per day for the expenses of the visiting judges and, having done so, this court could not say that $20 per day is unreasonable. In my opinion, this theory is based on erroneous assumptions, both of law and fact. The county board did not fix a lump sum of $20 per day for expenses nor appropriate for such a *per diem*. The petition alleges, and the motion to strike admits, that "the county commissioners of Cook county have appropriated by their annual appropriation bill the sum of $4500 to be used for the payment of the expenses of judges of courts outside of Cook county called in to serve as judges of the circuit court of Cook county."

The petition also alleges, and the motion to strike admits, "that prior to adoption of the 1937 annual appropriation bill by the Cook county commissioners it was resolved by the judges of the circuit and superior courts of Cook county, with the knowledge of said commissioners of Cook county, that judges of courts outside of said county, should be reimbursed for their expenses of up-keep and maintenance while holding court in Cook county, the lump sum of $20 per day and that petitioner consented to accept the same, and the said Cook county commissioners acted pursuant thereto and since the adoption of said appropriation bill paid such lump sums to various judges from other courts so serving in Cook county, including petitioner, for expenses incurred on dates prior to the dates involved herein."

This is far from alleging that the county board appropriated $20 per day for such purpose or fixed such an amount, but it does disclose that the judges themselves fixed and determined what should be paid as reimbursement to visiting judges. Of course, no one can claim that the judges had a right to appropriate any amount, but it is

claimed, and, in effect, held in the majority opinion, that such a determination, with knowledge of the county board and past payment by the comptroller of such lump sums, authorizes such payment as one appropriated for. It will be noted that payment is now refused because county authorities are advised that the same is illegal. It thus appears that the only authority for the payment of a lump sum of $20 per day to petitioner is the certificate of the chief justice of the circuit court that such sum is due him. How does the chief justice know this? What power has he to so certify such a lump sum? Why is not a certificate of petitioner's necessary expenses presented by him to the comptroller? Surely there is no justification in law for paying out public funds on the certificate of the chief justice that such sum is due or is reasonable. The county board has made no such an appropriation, and I repeat, therefore, that, in my opinion, the majority opinion proceeds on erroneous assumptions of law and fact.

The holding of the majority opinion that courts cannot say, in the absence of a showing that the amount of $20 per day is so excessive as to show a purpose to increase salaries, is based on the argument that such question rests in legislative discretion with which courts will not interfere. I have shown by the petition that the county board did not make such an appropriation. Language indicating that payments "are to be made upon certification of the amounts due by the chief justice of said court" do not and could not amount to an appropriation of such a *per diem*. While it is true that this court has nothing to do with the amount of an appropriation, actually made,—and if the complaint went only to the general appropriation of $4500 made by the board, such rule would be applicable,—such is not this case. The complaint also is that the county board did not appropriate $20 per day but this has been attempted by the judges by a certificate that such an amount is due petitioner. The county board did not and could not delegate to the

chief justice of the circuit court, the power to certify what is a proper bill of expense.

I am further of the opinion that this court can and should say as a matter of common knowledge that $20 per day is substantially more than a visiting judge requires to meet the expenses necessitated by holding court in Cook county, and, therefore, payment of such sum results in increasing salary.

The majority opinion holds that the legislative body may consider the dignity of the office, but there is nothing to indicate that it has done so here. Certainly, the circuit and superior court judges are not a part of the legislative department of county government. They, and they only, have attempted to fix a *per diem* expense. This court, and by the same token the circuit and superior court judges, cannot say that $20, or any other sum, is to be paid as expenses of visiting judges. Courts are permitted to know matters of common knowledge, and I assert as a matter of common knowledge that no visiting judge requires $20 per day as necessary expenses for holding court in Cook county. Judges of city courts who live within commuting distance may come from and return to their homes each day, yet, in addition to railroad fare, also allowed, they are to receive $20 per day while serving as visiting judges. Surely the payment of a sum which has not been fixed by legislative enactment, nor certified as correct by the visiting judge, cannot be vitalized by the certificate of another judge who, necessarily, has no first-hand knowledge of the facts. This court in the *Fergus case,* and other cases, has set its face squarely against an increase in salary of public officials under the guise of expenses of the office. *Hogan* v. *Stophlet,* 179 Ill. 150; *Hall* v. *Hamilton,* 74 id. 437.

If the total involved here were but a matter of a few dollars in an expense account, this dissent would not have been written. The thing involved is of vastly greater importance. If payment of public funds in a lump sum with-

out certificate of the visiting judge or other showing of his actual expense may be ordered by *mandamus*, when no such appropriation has been made, and the legislative department of the county has not declared such a payment proper, and which lump sum payment must look for its validity to the certificate of the chief justice, then, in my opinion, the door is opened for the payment of any sum under the guise of expense of the office, though it is, in fact, nothing but a gift, and, as such, an invalid increase in official salaries. The fact that no certificaate of actual expense is required of the visiting judge is the vice of this arrangement. In no other way can it be shown that a legal expenditure is being made. The judges of the circuit and superior courts may have intended to make it desirable to visiting judges to serve in Cook county, and so far as they use the private marriage fund for the purpose of such allowance, no one can complain, as that is not a public fund; but to so use public funds to pay such visiting judges a lump sum, without any showing that it was the amount paid out, is a pure gift of public funds.

In *People ex rel. Bockes,* v. *Wemple,* 115 N. Y. 302, the New York Court of Appeals held invalid, as providing additional salary, a statute providing that each judge of the Supreme Court should receive $1200 per year in lieu of all expenses. The act was characterized, "a clear grant of pay or compensation, having no connection with the expenses incurred by the justice."

It is elemental in the law of *mandamus* that the petitioner must show a clear right to the writ. This he has failed to do. The writ should be denied as to all defendants.

Mr. CHIEF JUSTICE FARTHING, also dissenting.