Little v. Dyer.

## John Z. Little and Elizabeth C. Little

### v.

## John W. Dyer.

*Landlord and Tenant—Lease—Conditions—Warrant of Attorney—Rent—Judgment by Confession—Fraudulent Representations.*

1.  The filing of a cognovit in an action for the recovery of rent, acknowledging the cause of action, the amount of damages, and releasing all errors in conformity with a condition in a lease naming a certain person as attorney for the lessees with such powers, operates to bind the parties executing the same, and no mere error up to and including the entry of judgment can be urged as a reason for the reversal thereof, unless a want of jurisdiction or exercise of power not given, is shown.

2.  It is the duty of a lessee, upon the discovery that representations which induced the hiring of the premises were fraudulent, to rescind the lease, if it is desired to escape its obligations.    Failing to do so amounts to an election to continue the same in force, and to abide by its covenants.

3.  Fraudulent representations made to induce the acceptance of a lease under seal, can not be relied upon as a defense in an action thereon; the remedy of the injured party in such cases is in equity.

4.  Upon the cancellation of a lease the delivery by the lessee of his copy to the lessor can have no effect upon the warrant of attorney provided for, in the absence of a binding agreement canceling the same.

[Opinion filed December 2, 1889.]

In error to the Superior Court of Cook County; the Hon. Kirk Hawes, Judge, presiding.

Mr. J. W. Merriam, for plaintiffs in error.

Messrs. FLOWER, SMITH & MUSGRAVE, for defendant in error.

GARNETT, J.  By lease dated March 6, 1887, John W. Dyer demised to John Z. Little, Elizabeth C. Little, George O. Morris and Annie E. Morris, the premises known as the Standard Theatre in Chicago, and all the scenery and equipments thereof, for a term of three years, four months and some days, the exact term not appearing in the record.  The lessees entered into possession of the premises, using the same for theatrical business, until about July 14, 1887, when the lease was canceled, and a new lease under seal, for the same premises and personal property, was made by Dyer to the plaintiffs in error and Charles O. White for a term beginning September 1, 1887, and ending June 30, 1890.  The lessees by the terms of the last lease agreed to pay as rent for the term, the sum of $36,000, which was to be paid in installments as specified in the lease, and all water rents, gas bills, cost of electric light, all license fees, and personal property taxes, levied during the term on the property demised; that in case they failed to pay the water rates and gas bills, the lessor might pay them, and the amounts so paid should be deemed so much additional rent.  The premises were occupied by the lessees until December 3, 1888, when the term was ended by mutual consent.  In the lease dated July 14, 1887, there was this clause:

" The party of the second part hereby irrevocably constitutes C. H. Remy or any attorney of any court of record of this State, attorney for him, her and them, in his, her or their name, on default of any of the covenants herein to enter his, her or their appearance, in any court of record, waive process and service thereof against any one or more of all of said parties of the second part in favor of said party of the first part for forcible detainer of said premises, with costs of said suit, or to confess judgment from time to time for any rent which may be then due by the terms of this lease, with costs, and to waive all errors and all rights of appeal from any such judgment or judgments."

Little v. Dyer.

On May 17, 1889, Dyer filed in the Superior Court his declaration against the plaintiffs in error (White having died as it is said) alleging there was due him, under the lease, the sum of $6,772.53, and attached to the declaration a copy of the lease. At the same time a cognovit was filed in the case signed by C. H. Remy, as attorney for the defendants, acknowledging the cause of action, the amount of damages, and releasing all errors in entering the judgment. At the same term the defendants appeared and moved the court upon affidavits then presented, to set aside the judgment and give defendants leave to plead. The motion was overruled and this writ of error was sued out to reverse the judgment as well as the action of the court in overruling the motion.

The waiver of errors is binding on the parties executing the warrant of attorney, and no more error up to and including the entry of judgment can be urged as a reason for reversal of the judgment, unless a want of jurisdiction or exercise of power not given, is shown. Frear v. Com. Nat. Bank, 73 Ill. 473; Hall v. Hamilton, 74 Ill. 437.

The only point that can be said to touch the jurisdiction, is that the warrant of attorney did not authorize any judgment, except against the plaintiffs in error and Charles O. White jointly. We think the warrant gave power to confess a judgment for rent against all, or any number of the lessees, and in any event that Knox v. Winsted Savings Bank, 57 Ill. 330, answers the question adversely to plaintiffs in error.

Aside from jurisdictional infirmities and absence of the power exercised, a case of this character comes to a court of review upon equitable features; the burden is therefore upon the defendant to show that the merits of the case are with him, and the question is whether the defendant should have been allowed to plead. Knox v. Winsted Savings Bank, *supra.* Turning to the affidavits to ascertain the merits of the case, we find it alleged, that prior to the making of the first lease Dyer made representation to the lessees therein as to the receipts of the theatre for some months prior to that time, as to its then current business, as to the amount of the expenses necessary to run the theatre, and as to the intention of the

proprietor of another place of amusement in the vicinity to close the same, all of which statements affiants say were false and known by Dyer to be false; that the previous receipts, during the time specified, were not more than about half as large as represented by Dyer; that the expenses were about fifty per cent larger than stated by him; that the first four weeks' expenses of running the theatre under the first lease with the same employes and expenses as under Dyer's management was from $100 to $200 per week larger than the amount so represented by Dyer, and that the place of amusement in the vicinity which Dyer assured them was to be closed had been ever since kept open and run as a place of amusement; that on and before the execution of the lease of July 14, 1887, John Z. Little offered Dyer $1,000 to release the defendants from the obligations of the lease of March 6, 1887, and that the lease of July 14, 1887, and the possession of the theatre was surrendered to and accepted by Dyer and the lease terminated about December 3, 1888. From their affidavits it appears that the falsity of at least one of the material representations alleged as a defense was discovered by plaintiff in error within a month after the execution of the first lease, but no information is given as to the time when the other alleged representations were found to be untrue. If the lessees desired to rescind on account of the alleged fraud, it was their duty to do so promptly when they discovered it. Failing to do so, they elected to continue the lease in force, and are liable on the covenants, and must be remitted to their remedy, if any they have, by action for the deceit or by bill in equity.

Upon discovery of the fraud the lease could have been terminated at once by bill in equity to rescind, and without any offer by Little to pay the lessor $1,000. He need not have implored a release as a matter of favor. But whether from ignorance or otherwise, they waived their rights, permitted the first lease to be canceled and actually entered into the covenants of a new one. It is too late to say that they are not held to the performance of the latter covenant. But a complete answer to the allegations of fraudulent representa-

Little v. Dyer.

tions to induce the lessees to accept the lease is found in Johnson v. Wilson, 33 Ill. App. 639, where we held that such representations are no defense to an action on an instrument under seal; that the remedy of the injured party is in equity. Counsel for plaintiffs in error say the affidavits prove a cancellation of the lease, and thereby the warrant of attorney became *functus officio*. The statement is that the lease and the possession of the theatre was surrendered to and accepted by the plaintiff. What was meant by a surrender of the lease is open to some doubt. It is the statement of a conclusion, not of a fact. But giving it a liberal interpretation for the plaintiffs in error, it may be supposed that they delivered to Dyer the duplicate or counterpart of the lease which Dyer gave them on July 14, 1887. If that is the fact, it would have no effect on the warrant of attorney, because, in the absence of proof, it must be presumed that Dyer also had and kept a duplicate. The warrant was a security exacted by Dyer when the demise was made, and he could avail himself of it until by some affirmative act he relinquished his rights thereto. Delivery of the duplicate lease to him added nothing to the surrender of the premises. The term was thereby ended, and the lessees had no reason to retain a paper which, so far as their interests were concerned, could be of no further benefit to them. It would be just as reasonable to say that if the lessees could only postpone action on the warrant until the term ended by the lapse of time, no action could be based thereon. In the absence of a binding agreement canceling the warrant of attorney it must be considered as remaining in force. The judgment of the court overruling the motion to set the same aside is affirmed.

*Judgment affirmed.*