STATE ex rel. TAYLOR, et al v. SIMBERG, et al.

Circuit Court, Dade County.

June 17, 1949, August 3, 1949,

August 25, 1949, April 11, 1950,

September 25, 1950, October 15, 1952.

R. K. Bell and David Koller of Brown & Koller, all of Miami, and Melvin J. Richard, Miami Beach, for plaintiff State ex rel. Harry Plissner.

R. K. Bell and C. Frederic Brown of Brown & Koller, all of Miami, for plaintiffs State ex rel. David Koller, David Koller individually, and Citizens League of Miami Beach.

Robert R. Taylor, County Solicitor, Dade County, relator.

Mark Silverstein, Alexander S. Gordon and Ben Cohen, all of Miami Beach, for defendants Harry and Jennie Simberg.

Ben Shepard, City Attorney, Miami Beach, for City of Miami Beach and its councilmen.

Marion E. Sibley of Sibley & Davis, Miami Beach, for movant 8701 Collins Avenue, Inc.

Glenn C. Mincer, State Attorney, Dade County, interim relator.

CHARLES A. CARROLL, Circuit Judge.

*June 17, 1949:* This cause came on to be heard before me on the pending motions to dismiss the bill and motions to strike portions of the bill, and argument was heard thereon after notice.

The bill was filed in the name of the state, on relation of Harry Plissner, under section 64.11 Florida Statutes Annotated,[1] against Harry Simberg and Jennie Simberg, his wife, owners of certain upland (riparian) lands on the Atlantic Ocean at Miami Beach, and against the city of Miami Beach and its governing body. It alleged that the Simbergs have erected and maintained a structure of the character of a swimming pool and cabanas, on and across the foreshore of the Atlantic Ocean opposite their lands, lying between the mesne or ordinary high-water mark and the low-water mark of the ocean, with the result that the relator and other members of the public are excluded from their authorized use and enjoyment of the foreshore; that the structures constitute a purpresture; praying that the purpresture be abated as a public nuisance, and for a mandatory injunction against said defendants to remove the purpresture and seeking similar relief against all other property owners along the oceanfront in Miami Beach who have caused and maintained similar purprestures—attempting to make the bill a class suit in that respect.

As a separate and dual aspect, the bill seeks a declaratory judgment against the city and the defendant city officials. As an individual, claiming as a member of the public for whose benefit such sovereign lands are held in trust by the state, the plaintiff alleges that the city has designated a harbor line or harbor lines in or along the shore of the ocean eastward or on the ocean side of the ordinary high-water mark and has used its authority to establish harbor lines as a basis for granting permits to riparian owners to erect such purprestures to the detriment of the public as indicated, and plaintiff invoked the jurisdiction of this court for a declaratory decree as to whether or not the city has authority to authorize riparian owners to fill in and erect structures between ordinary high and low water

---

[1] *Abatement of nuisance; parties; by whom maintained.*—Whenever any nuisance as defined in § 823.05 is kept, maintained or exists, the state's attorney, county solicitor, county prosecutor, or any citizen of the county through any attorney he may select, may maintain his action by a bill in chancery in the proper court in the name of the State of Florida upon the relation of such attorneys or citizen to enjoin said nuisance, the person, or persons conducting or maintaining the same and the owner or agent of the building or ground upon which said nuisance exists.

lines, resulting in appropriation by upland owners of the fore-shore and the exclusion of the public therefrom, and praying for a decree in the negative on such question, and to enjoin the defendants city of Miami Beach and its governing body from issuance of such authority or permits to upland owners.

A determination of the matter now before the court involves consideration of a number of questions which are dealt with separately below.

*First.*—The status of lands lying between the ordinary high and low water mark on the Atlantic Ocean in this state.

They are sovereign lands, owned by the state in its sovereign capacity, under an inalienable trust for the use and benefit of the public. That trust duty cannot be abrogated by the state or any agency of the state. The right to the enjoyment of its primary uses of the lands on the ocean between the ordinary high and low water mark which the public holds as beneficiaries of the state's trust is established by organic law—and cannot be taken away from the public by the legislature or by any court.

*Second.*—The status and the rights of an upland owner regarding the sovereign lands in question.

An upland owner holding riparian rights owns to the ordinary high-water mark, but not beyond it. As to the lands between the ordinary high and low water marks the riparian owner is entitled to share with the public in the primary uses for which the state owns such lands for the benefit of the public, and in addition is entitled to pass over such lands for ingress and egress to and from his property and to an unobstructed view of the waters across such lands.

As said by our Supreme Court in Thiesen v. Gulf, F. & A. Ry. Co., 78 So. 491, at page 501—

> The right [of an upland owner to appropriate the foreshore to his personal use] did not exist at common law. In Hale's Treatise De Jure Maris, Hargrave, it is stated that the ground between the ordinary high-water mark and low-water mark is owned by the sovereign, but not for his exclusive use and profit, but in trust for the common benefit of all his subjects. Any instrusion by the owner of the upland upon the shore between high and low water mark was unlawful, and was treated as a purpresture or a nuisance.

*Third.*—May this suit be maintained as a class suit binding on other owners of oceanfront property on Miami Beach?

In the bill the plaintiff includes an effort to obtain a decree binding against all unnamed owners of oceanfront property in the city who may have appropriated the foreshore in the manner alleged or charged against the named defendants Simberg and wife.

Section 14 of the 1931 Chancery Act permits class suits where the question is one of common or general interest to many persons constituting a class so numerous as to make it impractical to bring them all before the court.

It is apparent that any right to the relief sought against the purported "class defendants" would involve or depend on different or particular facts relating to the manner in which each individual upland owner may have appropriated or dealt with the foreshore lying beyond or opposite his land. There are essential questions inherent in the case which are not of common interest in the sense that they are the same as to all such purported class defendants. Therefore, to the extent that the bill seeks direct affirmative relief against the named upland owners Simberg and wife relative to their use of the foreshore opposite their land, the cause is not entitled to be maintained as a class suit against other unnamed landowners.

*Fourth.*—Is a purpresture abatable as a public nuisance at suit of an individual member of the public?

Any structure erected on sovereign lands, burdening or hindering the lawful public use thereof is a purpresture. The sovereign or state could move against it. Purprestures are regarded as public nuisances, and are abatable as such. Williams v. Guthrie (Fla.), 137 So. 682, 685; and see Ferry Pass I. & S. Ass'n. v. White's River I. & S. Ass'n. (Fla.), 48 So. 643.

An individual could not sue to abate such a nuisance, in the absence of special damage to him, except for the statute which allows such a person to proceed in the name of the state for an injunction against a public nuisance, section 64.11 F. S. A.

That statute authorizes an individual to proceed—as relator, in the state's name—against public nuisances as defined in section 823.05 F. S. A. The latter section says—

Whoever shall erect, establish, continue or maintain, own or lease any building, booth, tent or place *which tends to annoy the community* or injure the health of the community . . . . shall be deemed guilty of maintaining a nuisance, and the building, erection, place, tent or booth and

the furniture, fixtures and contents are declared a nuisance. All such places or persons shall be abated or enjoined as provided in §§ 64.11-64.15. (Italics added.)

A purpresture on the ocean beach which operates to take away from the public or burden or hinder the public in its use thereof for bathing and recreation, is a public nuisance because (1) the law so construes it, and (2) it may amount to a structure or "place which tends to annoy the community," bringing it expressly within those activities which are defined as public nuisances in section 823.05 F. S. A.

The allegations of the bill, as to the structures placed by the defendants Simberg and wife on the sovereign lands opposite their own lands, and as to their appropriation thereof to their private, personal and business use, to the exclusion of the public use thereof, appear sufficient to state a cause of action so as to entitle the plaintiff to proceed for an abatement or injunction against a public nuisance under section 64.11 F. S. A.

The suit, by virtue of that statute is, in effect, a suit by the state—and the right of the state to proceed is clear.

In fact, it is the duty of the court, in a case involving sovereign lands, "to take notice of the rights of the state and make appropriate orders to preserve such rights from impairment" even though the state should not be a party to the case. Williams v. Guthrie, supra, at page 686.

There is an additional and separate principle or rule of law under which the plaintiff is entitled to seek his injunction. As a member of the public the plaintiff sets himself up as a beneficiary of the inalienable trust under which the state holds these sovereign lands. The state has not seen fit to take direct action to uphold and enforce the trust for the beneficiary. It has, in effect, failed and refused to do so. Under those circumstances a beneficiary of the trust may bring such suit as the trustee could have or should have brought. See Scott, Trusts, vol. 2, sec. 294.01, and compare the Restatement of the Law, Trusts, sec. 295.

*Fifth.*—Does the bill exhibit a cause of action against the defendants consisting of the city and its governing body?

Against those defendants the plaintiff seeks a declaratory decree as to whether the city can authorize an upland owner to appropriate the state-owned foreshore lying opposite his lands

by bulkheading beyond the ordinary high-water mark, filling in and erecting structures thereon and devoting the same to private use in a manner so as to exclude or hinder the public in its lawful primary uses of such portion of the beach. It is alleged that the city has issued to landowners authority and permits which have so resulted, and it is claimed that a charter right to designate a "harbor line" cannot confer upon the city a legal authority, the exercise of which is thus complained of.

The question submitted for declaratory decree is one of importance to the public, and to the plaintiff as a member of the public entitled to the use of the state-owned beach. Determination of the question will include construction of the charter and certain city ordinances thereunder. Substantial questions are raised in that regard, appropriate for resort to a court for a declaratory decree.

The court takes judicial cognizance of certain facts relating to Miami Beach. It is a resort city. Among its main attractions are facilities for public ocean bathing and beach recreation.

If appropriation of sovereign owned beach lands by an upland owner will deprive the public of a right to use such lands as beneficiaries of the state's trust ownership thereof, and if the state sits back on its haunches like a balky mule and defaults in its duty to enforce the trust, the only resort left to the public is by a suit by the public or by a member of the public to secure and enforce their rights. Under such circumstances, arguments raising technicalities against an individual bringing such a suit seem lacking in importance.

Section 4 of the Declaration of Rights of the State of Florida provides as follows:

> *Courts open to everyone; remedy for wrongs.*—All courts in this state shall be open, so that every person for any injury done him in his lands, goods, person or reputation shall have remedy, by due course of law, and right and justice shall be administered without sale, denial or delay.

Whereupon, it is hereby ordered that the motions to dismiss and the motions to strike be and the same hereby are denied, and the defendants are allowed 15 days from the date of this order within which to answer the bill.

GEORGE E. HOLT, Circuit Judge.

*August 3, 1949:* The above cause coming on to be heard on the motion of the defendants that the same be heard by all of the

circuit judges of this county, sitting en banc, and it appearing to the court that the principles involved in this litigation pertain to and affect all oceanfront property, improved and unimproved on Miami Beach south of Baker's Haulover to the Government Cut; that the value of said property and the money involved and investments represented which may be affected amounts to more than 150 million dollars; that the entire basic economy of the city of Miami Beach will be affected by the decision to be rendered in this cause; that a multiplicity of suits will arise from the facts and circumstances of this particular controversy and there is a probability of different and conflicting rulings and decisions which may emanate therefrom if the various circuit judges entertain individual causes which will be filed in the future; that by reason of the foregoing conditions it is necessary that this cause be heard by all of the circuit judges of this county sitting en banc; counsel for the respective parties being present and there being no objection to the hearing of this cause by the circuit judges en banc, and the court being fully advised in the premises,

It is thereupon ordered, adjudged and decreed:

1. That the settlement of all pleadings be had before the judge in whose division this cause is now lodged.

2. That upon settlement of all pleadings herein it is directed that this cause be heard en banc by all of the circuit judges of Dade County, Florida, upon final hearing; that the date and time for the same be set when convenient to all parties concerned.

CHARLES A. CARROLL, Circuit Judge.

*August 25, 1949:* This cause came on to be heard on the sworn oral statement of Harry Plissner, the relator, who advised the court that for certain reasons of convenience or rather inconvenience he wished to withdraw as the citizen relator or plaintiff, suggesting that a person or persons he was advised were ready and willing to act as relator or plaintiff should be named in his stead. At the hearing the relator joined in a sworn written petition that he be permitted to withdraw as a plaintiff and for the substitution as plaintiff of Citizens League of Miami Beach, a non-profit corporation, which in the petition applied for the same thing, announcing a desire to act as plaintiff and to adopt the allegations of the bill as amended. At the hearing David Koller, a citizen of Miami

Beach, also moved the court orally (and later by written motion) that he be permitted to intervene in the cause as a plaintiff, adopting the allegations of the bill as amended.

It will be noted, as the record shows and as announced in a previous ruling in this cause, that the bill embraced *two* causes of action, one a cause to abate a public nuisance employing the statutory procedure provided in sections 64.11—64.15 F. S. A. directed against named owners of certain oceanfront property, and the other for a declaratory decree against the city of Miami Beach and its governing officials, to determine questions relating to the right and power of the city to authorize or permit upland owners to exercise exclusive control of claimed sovereign owned beach lands through the device of fixing a "harbor line."

Whereupon, it is ordered, adjudged and decreed:

That the application of the original citizen relator or plaintiff, Harry Plissner, to withdraw from the case is granted, but the cause is not dismissed.

That with respect to that part or cause of action of this suit seeking an injunction to abate a public nuisance against the defendant landowners the application of Harry Plissner to withdraw from the case should, under section 64.11 and 64.13 F. S. A., be construed to be an application of the said relator to dismiss the case; that on consideration of the record and the nature of the cause and the interest of the public and of the individuals which are involved this court is not satisfied that the case should be dismissed, and on the contrary holds that the case should not be dismissed, and thereupon, as provided for by the statute (sec. 64.13 F.S.A.) in such circumstances, this court orders that said cause shall continue and that the state attorney for this circuit and county, Glenn C. Mincer, shall proceed with the cause; and a copy of this order shall be delivered to the state attorney as notice to him to so proceed with the cause as contemplated and provided for by said statute.

That with respect to the cause proceeding under said statute it appears to the court that sections 64.11 and 64.13 read together do not intend or authorize that a citizen may file such a suit in the name of the state (and whereby the state becomes a party) and then have another citizen substituted for him as the sole relator or support for the suit, but rather that if

for any reason the original relator withdraws therefrom and the court rules that the cause shall not be dismissed but shall continue, the state attorney or county solicitor shall be notified to proceed therein and the one of them so notified will thereupon be in the position of a relator continuing the suit in the state's name and on its behalf; for that reason (and, as to the corporation, the Citizens League of Miami Beach, for the further reason that it is not an individual citizen under section 64.11 F. S. A.) the applications of the corporation and of David Koller to be substituted for or to intervene to take the place of the original relator Harry Plissner are not granted, in that the court has named the state attorney to proceed with the cause; it appears to this court, however, that after the state attorney has been named and so directed and the cause thus provided with an effective party plaintiff or relator as provided for by statute, then, in supplement thereto, it is not improper or inappropriate to permit intervention of a citizen as an additional relator or party plaintiff; whereupon, in addition to and after naming and directing the state attorney to proceed with this cause, the citizen David Koller is hereby permitted to intervene on the basis of his adopting the allegations of the bill as amended and the proceedings heretofore had herein, and the said David Koller shall be an additional relator in said cause.

That with respect to the part or cause of action of this suit seeking a declaratory decree against the city and its officials it is permissible to allow both the Citizens League of Miami Beach and David Koller to be substituted in this suit as plaintiffs (on the basis, as represented by them, of adopting the allegations of the bill as amended) and to act as plaintiffs regarding the cause of action in the place of Harry Plissner— and it is so ordered.

That in accordance with the foregoing provisions of this order the plaintiffs in this cause henceforth shall be, and be styled, as follows: "State of Florida, ex rel. Glenn C. Mincer, State Attorney, and ex rel. David Koller, and David Koller, individually, and Citizens League of Miami Beach, a corporation of Florida, not for profit, Plaintiffs."

*April 11, 1950:* In an order dated August 25, 1949 the court named the state attorney as plaintiff or relator under sections 64.11 and 64.13 of the statutes which provide, inter alia, as follows:

64.13. . . . . No bill of complaint when filed by any citizen shall be dismissed except upon a sworn statement made by said citizen and submitted to the court and unless the court shall be satisfied that said cause shall be dismissed, the said bill shall not be dismissed but shall continue and the state attorney or county solicitor notified to proceed with said cause.

Notwithstanding the foregoing the state attorney, after having been made relator in the case, has at various hearings expressed the view to the court that he does not see how he can proceed in the case because he is not in sympathy with the suit and because the matters complained of depend, in his view, in a measure upon a claim of invalidity or unenforceability of a city charter provision and ordinance, and that while he represents the state he as state attorney is under a duty to uphold and not to argue against the charter and the ordinances thereunder of the city (as an agency of the state).

Assuming (but not so ruling or deciding) that the nature of the position and official duty of the state attorney in the respects mentioned are as he sets forth, it may well be that the legislature contemplated (in enacting the section of the statute above quoted) that there might be certain circumstances in a suit under the statute where the nature of the duties of a state attorney might preclude his acting in that case—and that such was the reason why the legislature furnished the alternative of the county solicitor.

The fact is that the statute does furnish the court, in such a case, the alternative of ordering the case to proceed through either the "state attorney or county solicitor."

In view of the definite position taken by the state attorney against proceeding with this cause (for his reasons as stated above) and because the court is satisfied (though not passing on the correctness of his position) that the state attorney is himself convinced of the soundness of his position, it is ordered, adjudged and decreed:

That this court's order dated August 25, 1949 be and it hereby is amended to substitute for the state attorney, Glenn C. Mincer, wherever that official is named therein, the county solicitor for Dade County, Robert R. Taylor.

That it is the intent and purpose of this order that the court hereby exercises the alternative right given by the statute to name the county solicitor rather than the state attorney as the official who under the statute shall act to carry into effect

the court's holdings and ruling as made in said order of August 25, 1949 that this cause shall not be dismissed and that it shall continue.

That the effect of this order is — (a) that the state attorney is hereby relieved and shall no longer appear as a relator or plaintiff herein, and (b) that the state attorney is replaced in this case as relator or plaintiff by the county solicitor of this county, Robert R. Taylor, who shall proceed in this cause in all respects as though in the said order of August 25, 1949 he instead of the state attorney had been originally designated.

That except for the change by naming the county solicitor in place of the state attorney in said order of August 25, 1949, the order shall not be altered in meaning or effect and remains in full force.

That the furnishing of a copy of this order to the county solicitor shall operate as the notice to him (provided for in the statute) of this action of the court.

*September 25, 1950:* This cause came on to be heard before me on plaintiffs' application for preliminary injunction on the bill of complaint as aided by a sworn amendment filed September 5, 1950, and the court has heard and considered certain evidence and the arguments of counsel after notice.

The general nature of this suit, as it affects the defendant city, was summarized and stated by this court in its order on motion to dismiss, dated June 17, 1949, in the third paragraph, as follows:

> As a separate and dual aspect, the bill seeks a declaratory judgment against the city and the defendant city officials. As an individual, claiming as a member of the public for whose benefit such sovereign lands are held in trust by the state, the plaintiff alleges that the city has designated a harbor line or harbor lines in or along the shore of the ocean eastward or on the ocean side of the ordinary high-water mark and has used its authority to establish harbor lines as a basis for granting permits to riparian owners to erect such purprestures to the detriment of the public as indicated, and plaintiff invoked the jurisdiction of this court for a declaratory decree as to whether or not the city has authority to authorize riparian owners to fill in and erect structures between ordinary high and low water lines, resulting in appropriation by upland owners of the foreshore and the exclusion of the public therefrom, and praying for a decree in the negative on such question, and to enjoin the defendants city of Miami Beach and its governing body from issuance of such authority or permits to upland owners.

The amendment to the bill filed September 5, 1950 prays for a preliminary injunction pending final decree in this cause, to restrain the city from issuing permits for such structures or construction.

It is important to note the different nature and effect of a preliminary injunction as distinguished from an injunction which would be issued on final hearing upon deciding and resolving the merits of a case. The law on that point has been very well decided in Wilmington City Ry. Co. v. Taylor (D. C., Del.), 198 Fed. 159, 197-8, as follows:

On the question of the circumstances determinative of the propriety of granting or withholding preliminary injunctions there are certain well settled principles. The granting or refusal of a preliminary injunction, whether mandatory or preventive, calls for the exercise of a sound judicial discretion in view of all the circumstances of the particular case. Regard should be had to the nature of the controversy, the object for which the injunction is sought, and the comparative hardship or convenience to the respective parties involved in the awarding or denial of the injunction. The legitimate object of a preliminary injunction, preventive in its nature, is the preservation of the property or rights in controversy until the decision of the case on a full and final hearing upon the merits, or the dismissal of the bill for want of jurisdiction or other sufficient cause. The injunction is merely provisional. It does not, in a legal sense, finally conclude the rights of parties, whatever may be its practical operation under exceptional circumstances. In a doubtful case, where the granting of the injunction would, on the assumption that the defendant ultimately will prevail, cause greater detriment to him than would, on the contrary assumption, be suffered by the complainant, through its refusal, the injunction usually should be denied. But where, in a doubtful case, the denial of the injunction would, on the assumption that the complainant ultimately will prevail, result in greater detriment to him than would, on the contrary assumption be sustained by the defendant through its allowance, the injunction usually should be granted. The balance of convenience or hardship ordinarily is a factor of controlling importance in cases of substantial doubt existing at the time of granting or refusing the preliminary injunction. Such doubt may relate either to the facts or to the law of the case, or to both. It may equally attach to or widely vary in degree as between the showing of the complainant and that of the defendant, without necessarily being determinative of the propriety of allowing or denying the injunction. Where, for instance, the effect of the injunction would be disastrous to an established and legitimate business through its destruction or interruption in whole or in part strong and convincing proof of right on the part of the complainant and of the urgency of his case is necessary to justify an exercise of the injunctive power. Where, however, the sole object for which an injunction is sought, is the protection of property or legitimate business, or the maintenance of the status quo, until the question or right between the parties can be decided on final hearing, the injunction properly may

be allowed, even though there be serious doubt of the ultimate success of the complainant. There is abundant authority in support of these views. . . .

Also, at page 198:

But the case is not ripe for final decision, and to render one now would be both premature and improper. A final decision should be reached only after a thorough, orderly and rigid investigation of the facts, in connection with the law, so conducted as to allow the application of the usual and most satisfactory test of truth, namely, the examination, cross examination and re-examination of witnesses, and also the production of books, papers and accounts.

This last quoted statement is exactly applicable here. The instant suit is not yet at issue. Answers have been filed, but an order has been made on pleadings as a result of which certain amendments to the answers have been allowed and are pending. The case involves complicated points of law, and complex questions of fact. It would not be proper or feasible to grant or deny an injunction at this time on a basis of determining finally the respective rights of the parties on the merits—that should be done only after full trial and argument on final hearing. Therefore, this court is required to apply the settled principles which relate to the granting or withholding of a preliminary injunction, such as those set out and quoted above from the Wilmington City Ry. Co. case.

Plaintiffs made a showing that under certain ordinances the city has established a harbor line along a considerable part of the oceanfront within the city; that said area is a populous hotel section; that said harbor line lies east of, or on the ocean side of the high-water mark and as much as 75 feet out into the ocean; that the city has issued some twenty permits to individual owners to bulkhead out to such harbor line, and to fill in, and erect structures thereon—all since the filing of this suit which challenged the city's right to do so.

The facts generally are admitted by the city. The city does not dispute the fact that the harbor line lies generally east of the high-water mark, or that the construction which it has permitted to landowners has the effect of a taking over by them of the present beach.

During the hearing before me it was admitted on behalf of the city that they were issuing said permits and would continue to do so unless enjoined, without regard to whether said permits permitted the taking over, or building of struc-

tures upon the present foreshore (lying between high and low water marks) of the Atlantic Ocean; the city further admitted that it was not concerned with whether or not construction authorized by its permits based on its harbor line resulted in the taking over by individuals of state-owned lands, and the city's position was that that is a matter for the state to be concerned with, if such is the fact. The city submitted some charts to indicate that the high-water mark previously was east or oceanward from the present beach, but the facts as to that, together with the legal effect of the facts on the city's rights in the premises, are matters to be settled on final hearing, and not to be determined and adjudicated on this preliminary application.

It is apparent that the purpose of the preliminary injunction sought here is the preservation of the state's and the public's rights in the property in controversy, until a decision of the case on a full and final hearing upon the merits.

On the matter of the comparative hardship or convenience to the respective parties, in the awarding or denial of the preliminary injunction, the balance appears definitely in favor of the plaintiffs.

It was conceded by the city at the hearing that a preliminary injunction as prayed for would not embarrass or inconvenience the city.

On the other hand, the continued issuance of such permits by the city during this litigation would have serious adverse results on the rights of the state and the public as asserted by the plaintiffs in the event the plaintiffs should prevail in the case on final hearing. That is so obvious that it seems unnecessary to elaborate on the point.

While the outcome of the suit may be in doubt, as it is in any case, the plaintiffs have a good and substantial case which is being asserted here, and it appears to this court on consideration of all the factors involved to be eminently proper that a preliminary injunction should be entered to preserve, to the extent that it will, the rights and property which are in controversy until the matter can be settled on final hearing.

This preservation of the status quo would preclude the granting of permits or sanction by the city for an upland or riparian owner to construct a bulkhead or to filling or constructing

beyond or east of the present ordinary high-water mark of the Atlantic Ocean, or for erection of any wall or fence across the foreshore with the intention or having the effect of blocking or excluding passage of people along the foreshore — but should not extend to preventing the city from authorizing the building of groins or jetties out into the ocean for the purpose of capturing sand for preserving and increasing the beach.

It is accordingly ordered, adjudged and decreed:

That the defendant city of Miami Beach, its councilmen, agents, employees and attorneys be, and they and each of them are enjoined and restrained—pending final hearing and decree in this cause—from granting to any upland or riparian owner of property along the Atlantic Ocean or to any other person, a permit or authority to construct a sea wall, bulkhead, fill or other structure, on or across the foreshore of the Atlantic Ocean as the same exists and is located today and as the same shall exist and be located from day to day, being that area lying east of the existing high-water mark of the Atlantic Ocean.

Inasmuch as such construction, of the character which is enjoined in the preceding paragraph, previously was permitted by the city only upon permit and thus was controlled by the city through the device of building permits, this injunction against the city's granting or continuing to grant such permits pending this cause, shall be construed to be an order that the city shall control such construction and not permit the same either by the granting of permits or without its permits.

That this injunction is made notwithstanding the existence of ordinances of the city establishing a harbor line which generally lies east of the existing high-water mark of the Atlantic Ocean and under which ordinances—without regard to the location of the foreshore—the city purportedly authorized itself to grant permits for construction of the type which has been enjoined by this order.

An exception to this injunction shall be that it shall not extend or apply to construction of groins or jetties built at right angles to the beach, in an east-west direction, the object and purpose of which are to preserve an existing beach, to trap the sand and to improve or enlarge the beach, but the authority to grant permits for the erection of such groins shall not include authorizing or permitting erection of fences or walls across

the foreshore or out into the ocean the object or effect of which are to obstruct and prevent passage of the public along the foreshore portion of the beach.

That the individual plaintiffs, or one of them, shall file their or his injunction bond herein, made payable to the defendants, in the principal amount of $500, with good and sufficient surety to be approved by the clerk of the court, conditioned as required by law.

*October 15, 1952:* It appears that this suit presents two causes of action. They involve different questions, and call for different proofs and forms of relief or decree.

The cause against the defendant landowners is a statutory proceeding to abate a public nuisance, under section 64.11 F.S.A.

The cause asserted against the city is for a declaratory decree as to the validity and effect of a charter provision to set a harbor line and allow building out to it, where such harbor line is fixed oceanward beyond the beach, as against the state's ownership of the high-to-low-water-line beach in trust for the public under organic law.

Convenience of the court and the litigants requires that the causes be tried one at a time, and it appears that the cause involving the defendant city for a declaratory decree should be tried or heard first, because if that cause is resolved in the manner contended for by the city, then the second cause of action against the landowners might not need to be tried.

The cause is now at issue, through a recent order settling pleadings, and by substitution of a defendant city councilman for one whom he succeeded. He was given a choice to answer or adopt defendants' pleadings, and appears to have done the latter.

On August 3, 1949, on motion of the defendant landowners, an order was made in this cause, by another judge acting as an alternate in this case for the undersigned during the latter's absence on a regular summer vacation. That order provided that the cause should be tried by all the judges en banc.

The order recited that counsel for all parties were present and that they did not object. Their consent or acquiescence, obviously, would make that order good, or not erroneous (Hall v. Hamilton, 74 Ill. 437, 441), as it would amount to a waiver

198

of the point that the several judges of a circuit are not set up to act en banc in trial of cases and may not properly do so. Article V, Section 43, Florida Constitution; State ex rel. Brooks v. Freeland (Fla.), 138 So. 27; Meyer v. Nator Holding Co. (Fla.), 136 So. 636, 638; United American Ins. Co. v. Oak (Fla.), 166 So. 547, 551; City of Coral Gables v. Blount (Fla.), 178 So. 554, 555; Terry v. Ferreria (Fla.), 51 So. 2d 426, 428; Jones v. Albee, 70 Ill. 34, 38-39; Hall v. Hamilton, supra, 74 Ill. 437, 439-441; Courshon v. Browning, 78 Ill. 208, 211-212; People ex rel Jonas v. Schlaeger (Ill.), 45 N.E. 2d 30, 34-35; and Sullivan v. Milledge, 2 Fla. Supp. 125.

It appears that said order for en banc trial in this suit was made three years before the case became ready for trial. Much has occurred in the case since then. Some parties have been eliminated and others added or substituted, and certain counsel have come and gone. Pleadings have been amended on both sides, new or additional pleadings filed, and several appeals or reviews have been passed on in the Supreme Court. So the situation is not the same on the record, and more important is the fact that where at that time there were six judges here to be considered in a trial four more have now been added in this county—making a total of ten circuit judges.

At a recent hearing in this case on a motion for a pre-trial conference, counsel for all parties appeared to be in agreement that an order for en banc trial under present conditions is tantamount to an order that there shall be no trial.

Also counsel appeared to agree that in the absence of any law fixing essential rules for trial, such as what number shall be a quorum, or that the vote on all points in the trial shall be unanimous, or dispensing with any quorum and leaving each judge to vote as the "court" on all points, or as to which judge's vote will bind which other judge, and other such questions, an attempt to try the case before all the judges would be impracticable (1) because they probably never would find the right or convenient time for it for all of them, and (2) because it would be like trying to play a baseball game without any rules, with ten umpires passing on each play, all equally empowered to act authoritatively and independent of the others, and forced to make up rules as the game proceeds.

Also at the hearing on the pre-trial motion the only attorney who still liked or wanted an en banc trial was the attorney for the defendant landowners—and who was frank and fair

enough to say that if an order for the en banc trial would operate to permanently postpone trial he was for it.

However, the State constitution, by section 4 of the Declaration of Rights, guarantees that a remedy sought in the courts shall be tried and disposed of "by due course of law, and right and justice shall be administered without sale, denial or delay".

Because an en banc trial before all the judges of this court would operate to prevent a trial under established rules of law and procedure, and would delay trial unduly if not permanently, the prior order made in this cause for trial en banc before all the judges of this circuit will be set aside, and the cause will proceed to trial before the undersigned in whose division of the court it is pending.

It is accordingly ordered, adjudged and decreed as follows:

1. The two causes of action in this suit are severed for the purposes of trial, and the cause of action for declaratory decree against the defendant city shall be tried first, ahead of and apart from the cause of action against the landowner defendants for abatement of public nuisance.

2. The prior order of this court in this cause for an en banc trial before all the judges is vacated and set aside, because it is impractical in view of changed conditions since its entry.

3. The said separate cause of action for declaratory decree is hereby set for trial and final hearing before the undersigned judge on October 22, 1952 at 2 p.m.